## VAN PATTEN & MARKS v. LEONARD ET AL.

1. **Landlord and Tenant:** LANDLORD'S LIEN: PROPERTY USED ON LEASED PREMISES.   Property must be actually used on leased premises to entitle the landlord to a lien thereon for rent.   The fact that it is used in connection with the business carried on in the premises is not sufficient, nor is a lien given by the statute on notes and accounts due the lessee and kept on the premises.

2. ———: LEASE: CONSTRUCTION OF.   The terms of a lease which made the rent charge for a store building a lien on "any and all goods, wares and merchandise" then in or thereafter to be put in, on or about the buildings, were held not to include teams and wagons used by the lessee in delivering goods to his customers, nor notes and accounts due him and kept in the building.

3. **Mortgage:** ON CHATTELS: CONSTRUCTION OF.   A chattel mortgage on the "fixtures, furniture and appliances used in and about the carrying on of" a certain store, was held not to cover wagons and teams used by the mortgagor for the delivery of goods from the store to his customers.

*Appeal from Scott Circuit Court.*

THURSDAY, MARCH 24.

THE plaintiffs bring this action for the possession of six horses, three sets double harness, three delivery wagons, and certain promissory notes, checks, written obligations, and all

books of account and accounts therein stated owing to one Robert W. Pool. The plaintiffs base their claim to said property upon two bills of sale executed by Robert W. Pool. The defendants answered, alleging that they held said property under a chattel mortgage executed by Robert W. Pool to William Pool, and under a landlord's attachment for rent due from Robert W. Pool to Sarah Jane Pool, executrix of William Pool, deceased. The cause was tried to the court. The court found that the plaintiffs are entitled to the possession of all the promissory notes, drafts, due bills, acceptances, checks, and written obligations, books of account and accounts therein stated, in controversy. The court further found that the plaintiffs have a qualified title to the horses, harness and wagons in controversy, subject to a lien for rent in the sum of $551.36. The plaintiffs having obtained possession and disposed of the property, judgment was rendered against them for the sum of $551.36, and one half of the costs. Both parties appeal. The material facts are stated in the opinion.

*Stewart & White,* for plaintiffs.

*Roderick Rose* and *Martin, Murphy & Lynch,* for defendants.

DAY, J.—On the 2d day of October, 1877, Robert W. Pool purchased of William Pool a retail grocery store, and executed therefor five promissory notes, each for the sum of $780.40, and due respectively in one, two, three, four and five years. To secure these notes Robert W. Pool executed a chattel mortgage upon property described as follows: "All the goods, wares, merchandise, fixtures, furniture and appliances used in and about the carrying on of a first-class retail grocery store, that are now in the house known as No. 422 Brady street, Davenport, Iowa, whether in the cellar, on the first floor, on the second floor, or wherever used, or had, or kept in connection with the business done at No. 422 Brady street, Davenport, Iowa, and on all such like goods, wares, merchan-

dise, fixtures or furniture that may from time to time be placed in or about said store, No. 422 Brady street." This mortgage was acknowledged and filed for record October 13, 1877.

On the 2d day of October, 1877, William Pool leased to Robert W. Pool a two story brick building known as No. 422 Brady street, Davenport, for four years from October 2, 1877, at the yearly rent of $700, payable in equal monthly payments, the said Robert W. Pool " covenanting that said rents, whether due or to become due, shall be a perpetual lien on any and all goods, wares, merchandise, now in, or hereafter to be put in, on or about said building, No. 422 Brady street, Davenport, Iowa, whether the same be exempt from execution or not."

On the 21st day of April, 1879, R. W. Pool, being indebted in a large amount to the plaintiffs, executed and delivered to them a bill of sale, as follows: "Know all men by these presents, that I, Robert W. Pool, party of the first part, in consideration of $1,000 paid by Van Patten & Marks, party of the second part, do hereby sell and convey unto said party all my right, title and interest in and to the following personal property, viz.: One span of horses, double harness and spring delivery wagon used in delivering goods in the city of Davenport, Iowa; one span of horses, double harness and spring delivery wagon used in delivering goods in the city of Rock Island, Illinois; one span of horses, double harness and spring wagon used in delivering goods in the city of Moline, Illinois, but all housed in the city of Davenport, Iowa, hereby warranting to said second party that I have full right to sell and convey said property, and that there are no claims or liens as against the above conveyed personal property." This bill of sale was filed for record May 13, 1879, at 7:25 o'clock P. M.

On the 13th day of May, 1879, at about four o'clock P. M., Nathaniel Leonard entered the store of Robert W. Pool, and seized the contents of the store under the chattel mortgage to

William Pool. The safe was open, but Leonard did not look into it. He left one Hall in charge of the store, with instructions not to allow the safe to be shut. The notes and accounts in question were in the safe. The next morning the safe was found locked. On the same day that Leonard took possession of the store R. W. Pool executed to the plaintiffs a bill of sale as follows: "For a valuable consideration, the receipt of which is hereby acknowledged ,and confessed, I do hereby sell, assign, transfer and set over unto Van Patten & Marks all promissory notes, drafts, due bills, acceptances, checks and written obligations by me owned and possessed, together with my books of account and the accounts therein stated and owing or due to me, and which said personal property is now contained in a certain safe, now situated in a store lately occupied by me, known as 422 Brady street, in the city of Davenport, Scott county, Iowa, and which safe is owned, or alleged to be owned, by the estate of William Pool, deceased, and said store is now, or is claimed to be, in the possession of the sheriff of Scott county, Iowa, under and by virtue of a certain mortgage executed and delivered by me to William Pool. All of said property above described, and being as accurate a description thereof as I am now able to make, is hereby sold, assigned, transferred and set over unto said Van Patten & Marks, as collateral security for the indebtedness now due, owing, and to become due, from myself to them; the said Van Patten & Marks to collect the same, and after deducting expenses, to apply the same upon the indebtedness to them as aforesaid, and the surplus, if any thereafter, to account and pay over to myself, my heirs, executors, administrators and assigns." This bill of sale was duly acknowledged, and filed for record May 13, 1879, at 8:05 o'clock P. M.

A landlord's writ of attachment issued out of the Circuit Court in an action of Sarah J. Pool, executrix, against Robert W. Pool, for rent due upon the lease aforesaid, the return of the sheriff upon which writ is as follows: "By virtue of the within attachment, and in pursuance thereof, I have this 13th

day of May, 1879, at 9:25 P. M., levied upon the following described personal property lying and being situated in Scott county, Iowa, to-wit.: "The stock of goods, furniture, fixtures, books, accounts, etc., safe and contents, situated on the premises herein described; also three delivery wagons, three sets double harness, one set single harness, one cream gelding horse, one black stallion, one brown mare, one brown horse and two black horses." This levy includes the property in controversy, which was taken from the custody of the sheriff and turned over to the plaintiffs by virtue of a writ of replevin.

I. The court below found that Sarah Jane Pool, as executrix of William Pool, was entitled to a lien for rent upon the horses, harnesses and wagons in question, under the provisions of section 2017 of the Code. This section provides: "A landlord shall have a lien for his rent upon all crops grown upon the demised premises, and upon any other personal property of the tenant which has been used on the premises during the term, and not exempt from execution, for the period of one year after a year's rent, or the rent of a shorter period claimed, falls due; but such lien shall not in any case continue more than six months after the expiration of the term." The horses, harnesses and wagons were all, with the exception of one old wagon, purchased after the execution and delivery of the mortgage and lease. They were kept in a barn about three blocks distant from the store, and upon separate and distinct property. The store building covers the lot upon which it is situated, and is directly on the line of the street. The horses, harnesses and wagons were never upon the lot. They were used by R. W. Pool in connection with his business in delivering groceries to customers, and frequently stood in the street in front of the store. The evidence shows that it is the general custom of grocers in the city of Davenport to keep wagons and teams to deliver goods from their stores to their customers. Section 2017 of the Code does not require that

1. LANDLORD and tenant: landlord's lien; property used on leased premises.

the property of the tenant shall be used in the prosecution of his business upon the premises, in order to entitle the landlord to a lien thereon.    The only requirement is that the property shall have been used on the premises during the term.    Use upon the premises is essential.    Now, if these horses, and wagons, and harnesses were used upon the premises, and are subject to a landlord's lien under the statute, it follows that if Robert Pool had kept a horse and carriage to ride daily, or even occasionally, from his residence to his place of business, and had allowed them, for his convenience, to stand in the street in front of the store, they would have been used upon the premises, and would have been subject to a landlord's lien.    Such a construction would extend the statute to cases to which it has no application.    We are clearly of opinion that no lien for rent exists under the statute upon the property in question.

II.    Do the terms of the lease create a lien upon the horses, harnesses and wagons in question?    The tenant covenants

*2. ——: lease construction of.* " that said rents, whether due or to become due, shall be a perpetual lien on any and all goods, wares, merchandise, now in, or hereafter to be put in, on or about said building, whether the same be exempt from execution or not."

It is said in Burrell's Law Dictionary that the word *goods* strictly seems to be applicable only to *inanimate* movables, being in this respect less comprehensive than chattels, which include animals.    It is further said that the term merchandise is usually, if not universally, limited to things that are ordinarily bought and sold, the subjects of commerce and traffic.    The fact that a thing is sometimes bought and sold is no proof that it is merchandise.    The construction of these terms depends largely upon the connection in which they are employed.    In the statute of frauds it is said they comprehend all corporal, movable property, but not notes, bills, etc. Benjamin on Sales, section III; *Vawtee v. Griffin*, 40 Ind., 593; *Whitmore v. Gibbs*, 4 Foster (N. H.), 488.

Under the importation laws it has been held that when horses are brought into this country for use or sale, they would be included in the term "merchandise" as used in the act, but if they are the mere instruments of prosecuting a journey they would not be so included. *United States v. One Sorrel Horse*, 22 Vt., 655.

In the case of *Curtis v. Phillips*, 5 Mich., 112, the following provision was contained in a chattel mortgage: "All the goods of different varieties and kinds in the store of said first party at, etc." An iron safe was kept in the store for use in the business, but not for sale. The question was whether the safe was included in the mortgage. The court says: "The term *goods*, when used in contradistinction to real estate, would doubtless include all kinds of movable personal property, and even bills, notes, certificates of stock, etc. But it cannot be supposed to have that extent of meaning in the case of this chattel mortgage. The question here is of intent, and we think it quite clear that when a merchant speaks of the goods in his store he must generally be understood to have reference only to the merchandise and commodities kept on hand for the purpose of sale, unless there be some particular reason which does not appear in this case to give the term a broader signification. This certainly is the popular sense of the term in this country when we speak of a merchant's goods in his store. The case concedes that the safe was not kept for sale in the store, but for his own private use, and we are, therefore, of opinion that it was not the intention of the mortgagor to include the safe in the mortgage as a part of the goods, and that the mortgage, when taken in connection with the facts found, cannot be construed so as to include it." This reasoning is directly applicable to the case at bar. It need not be said that the word *wares* in this connection is not more comprehensive than the word *goods*. We are of opinion that the words goods, wares and merchandise, as used in this lease, cannot properly be so construed as

to include the horses, harnesses and wagons employed in delivering goods to customers.

Further, it is to be observed that the lease provides that the rent shall be a lien upon all goods, wares and merchandise, *now in, or hereafter to be put in, on or about said building*. The horses, harnesses and wagons were kept in a barn three blocks from the building. They were never in the store, nor about it, except to remain temporarily in the street in front of it. They were not on or about the building in the sense contemplated in the lease.

III.   Did the mortgage create a lien upon the horses, harnesses and wagons in question? In addition to the words used in the lease the mortgage employs the words *"fixtures, furniture* and *appliances* used in and about the carrying on of a first-class retail grocery store." The only term which could be claimed to include the horses, harnesses and wagons is the word *appliances*. It is possible that it would not be altogether inadmissible to speak of the horses, harnesses and wagons as appliances for conveying goods sold to customers. But here again the circumstances and situation of the parties must be considered. Robert W. Pool had purchased a retail grocery store from his brother. He was executing a mortgage upon the store to secure the purchase money. It may be presumed that both parties were aware of the general custom of retail grocers in the city of Davenport to keep teams to deliver goods to customers. Now, it is not reasonable to suppose that, if one party intended to execute and the other to obtain a mortgage upon the horses and wagons which might be thus employed, they would use a term so indefinite as the word appliances. As was said in *Curtis v. Phillips, supra*, the question is of intent. We cannot believe that either of the parties to this instrument intended by the word appliances to include horses, harnesses and wagons. It is only by an extended, and, perhaps, somewhat forced construction that it

*3. MORTGAGE : on chattels : construction of.*

can be made to include such property. The word ought not to be extended beyond its usual and ordinary meaning.

IV. The court denied the defendants a lien upon the notes, drafts, due bills, accounts, etc., embraced in the bill of sale to the plaintiffs. This property was not used upon the premises in the sense contemplated in section 2017 of the Code, and hence no statutory lien existed thereon. It is not, in our opinion, embraced in the term goods, wares and merchandise, employed in the mortgage and in the lease. From what has already been said it is apparent from the circumstances under which these words were employed that the parties referred to the commodities kept on hand in the store for the purpose of sale. On the defendants' appeal the judgment is affirmed. On the plaintiffs' appeal,

REVERSED.