## 10883

### SMITH v. BOYER *ET AL.*

### DENT v. BOYER *ET AL.*

#### (112 S. E. 71)

1. FRAUDULENT CONVEYANCES—TRADE FIXTURES (ADJUNCTS) NOT "MERCHANDISE" WITHIN BULK SALES ACT.—"Merchandise" means all kinds of personal property usually bought and sold in trade or market by merchants, and, under Bulk Sales Act, trade fixtures are not included within the terms of the Act.

2. FRAUDULENT CONVEYANCES—BULK SALES LAW STRICTLY CONSTRUED. —Bulk Sales Act, being in derogation of the common law, which gives the owner the right without fraud to dispose of his property as he pleases, is strictly construed.

3. FRAUDULENT CONVEYANCES—"MERCHANDISE" INCLUDES ONLY ARTICLES FOR SALE.—"Merchandise," under Bulk Sales Act does not include articles kept wholly or partially for use in and about the building, but only articles for sale.

4. FRAUDULENT CONVEYANCES—SALE NOT COMPLYING WITH BULK SALES ACT ONLY PRIMA FACIE FRAUDULENT.—A sale of stock of merchandise violating Bulk Sales Act raises only prima facie presumption of fraud.

5. SUBROGATION—PURCHASERS OF MERCHANDISE STOCK VOIDABLE UNDER BULK SALES ACT, SUBROGATION TO RIGHTS OF MORTGAGEE.—Notwithstanding a technical violation of the Bulk Sales Act, the purchasers of merchandise who paid a mortgage on the "trade fixtures" and "adjuncts" were entitled to subrogation to the rights of the mortgagee.

6. FRAUDULENT CONVEYANCES—UNDER BULK SALES ACT NO PERSONAL LIABILITY BY PURCHASER, WHERE PROPERTY IN PURCHASER'S HANDS.— Bulk Sales Act provides that, if the merchandise or any part of it is in possession of the purchaser, it ("the property," not the purchaser) shall be liable to the creditors, and, where the property had not been disposed of by the purchaser, no personal judgment could be obtained against the purchaser.

7. FRAUDULENT CONVEYANCES—REMEDY, WHERE GOODS SOLD IN VIOLATION OF BULK SALES ACT ARE IN PURCHASER'S POSSESSION, IS BY SUIT IN EQUITY.—Where goods sold in violation of the Bulk Sales

NOTE: The question as to what are "fixtures" within the meaning of Bulk Sales Law is discussed in note in 34 L. R. A. (N. S.) 218.

On remedy of creditors where sale is made in violation of Bulk Sales Law, see notes in 39 L. R. A. (N. S.) 374 and L. R. A. 1916B, 974.

Act, are still in the purchaser's possession, the remedy of creditors is an equitable action to subject them to the payment of the creditors' claims, not by action at law against the purchaser.

Before WHALEY, J., Richland County Court, March, 1921. Reversed and complaint dismissed.

Two cases—Enoch Smith, doing business as Fair Grounds Stock Yards, against J. E. Boyer, E. A. Johnson and J. M. Whitton; and B. M. Dent against the same parties. From judgment for the two plaintiffs the defendants Johnson and Whitton appeal.

The following is the decree of Judge Whaley, referred to in the opinion:

These two cases, involving identical facts, were heard together before me on March 17, 1921. Evidence was taken, in substance, by myself, and arguments of counsel heard.

The facts, as to which there is no material dispute, are substantially as follows: On February 2, 1920, the defendant Boyer sold to the other defendants, Johnson and Whitton, all the articles in his place of business as a butcher, which he did not keep for sale, but without which he could not have conducted the business, and which, for convenience, may be termed "trade fixtures." The next day he sold the same parties all of that which he dealt in daily, namely, meat and ice tickets. When the first trade was verbally closed on February 2, the purchasers being informed by the seller that there were no outstanding debts, required an affidavit to that effect. However, no inventory was made by the seller. A bill of sale was, on the 3d of February, duly executed and delivered to the purchasers, who had same recorded on February 5. At the time of such delivery, the seller informing the purchasers of an incumbrance outstanding in the name of J. B. Boyer, son of J. E. Boyer, defendant, on which there was due $1,000, that much of the consideration was paid by way of check to J. B. Boyer, the balance of $25 being

paid by way of check to J. E. Boyer. The check to J B. Boyer was indorsed by him, then by his father, and presumably cashed by the latter.

The sale of the meat and tickets was consummated on February 3, without any writing, and check given in payment to J. E. Boyer for $81 therefor. The defendant, Johnson, who acted for the purchasers, said he knew nothing of the Bulk Sales Act (Civ. Code 1912, § 2434), but knew affidavit had to be obtained; that he knew of no one of whom to inquire as to whether or not Boyer owed any debts, and said he did not feel it his business to so inquire. He further stated that he knew Boyer was in the butcher business; knew that Swift & Co. and some others were in business of like character, but made no effort to inquire of any of them. Said he knew now that Boyer owed others in the city accounts varying in amount; that Whitton nor himself had any intention of defrauding anyone. Johnson employed attorney to draw bill of sale. Whitton said he was a stranger here and did not know any of the local meat traders.

It is not disputed that the plaintiff in each case was owed by Boyer at the time of sale, and now, the amounts set forth in the respective complaints.

The only issues in the case are those of law. The first involves a construction of the section in question, 2434 of the Code of 1912. What does the term "merchandise" or "stock of merchandise," considering its relation to the context, include? A proper conclusion can only be determined by the application of the rules of construction. Generally, a statute in derogation of the common law must be strictly construed. Courts of other States have so held. 12 R. C. L. 525; *Swift & Co. v. Tempelos,* 178 N. C. 487, 101 S. E. 8, 7 A. L. R. 1581, and note at page 1587. The Courts of Georgia have so held, and yet have concluded that the term "merchandise" included such articles as are commonly considered a merchant's "trade fixtures."

*Parham v. Potts-Thompson Liquor Co.,* 127 Ga. 303, 56 S. E. 460. *Cooney v. Sweat,* 133 Ga. 511, 66 S. E. 257, 25 L. R. A. (N. S.) 758.

A construction of the letter should not be so strict as to contravene the spirit or reason for a law. Both are vital elements. The latter often will prevail over the former. *Ham v. McClaws,* 1 Bay, 93. As intimated by our Supreme Court in disposing of the petition for a rehearing in the case of *Bank v. Huey & Martin Drug Co.,* 113 S. C. 333, 102 S. E. 516, in determining whether such a term is "sufficiently comprehensive" to include such fixtures, there must be kept in mind what the Legislature intended, "in view of the general purpose of the statute and the evils which it was designed to prevent and remedy." This is in consonance with our former decisions.

As was said in *State v. Columbia, etc., Electric Co.,* 100 S. E. 355, at page 358, 112 S. C. 528 at page 538: "The legislative intention must be gathered from the language of the statute—not that found in any particular section or proviso, but from the statute as a whole —and it must be read in the light of all the circumstances, the situation and relation of the parties, the subject of the grant, *and the purpose to be attained.*" (Italics inserted).

To a like effect is the following from State ex rel. *Walker v. Sawyer,* 104 S. C. 342, at page 346, 88 S. E. 894, at page 895: "While it is an elementary rule of construction that words used in a statute should be given their plain and ordinary meaning, this, as all other rules, is subject to the prime object of ascertaining and giving effect to the legislative intention. In doing this, we are not to be governed by the apparent meaning of words found in one clause, sentence, or part of the Act, but by a consideration of the whole Act, read in the light of the conditions and circumstances as we may judicially know they appeared to the Legisla-

ture, and the purpose sought to be accomplished. "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the Legislature has in view. Their meaning is found, not so much in a strictly grammatical or etymological propriety of language, nor even in its popular use, as in the subject or in the occasion on which they are used, and in the object to be attained.' Endlich on Interpretation of Statutes, § 73."

It has even been held, that "regardless of how plain the meaning of words used in a statute may be, yet the Courts will not follow that meaning, if it is manifestly contrary to the intent of the Legislature, but will construe the statute so as to carry its intention into effect." *Carter v. Barnes,* (1910) 87 S. C. 102, 68 S. E. 1054.

There can be no reasonable doubt, in applying these rules to the instant case, that the intent was to include in the terms at issue not only the articles daily bought and sold, but such as were necessary and naturally incidental to the proper conduct of such business, and kept on hand, though not regularly placed on sale, as for example, show cases, scales, refrigerators, desks, cash registers—chattels in their nature and themselves of a merchantable character. They can be "merchandise" or part of a "stock of merchandise." They, or some of them, are used as essential factors in the ordinary course of trade in every business of buying and selling.

To say that they should be differentiated as "fixtures," would, generally speaking, be to assert that they were not chattels, but of the freehold, unless one assumes that the Legislature had in mind only the more modern and particular meaning, "trade fixtures." The Court will not cause an interpretation to turn on an assumption alone. But rather will it assume, where two meanings are evident, that it was the intention to adopt that which would be most in

conformity with the statute's manifest design and best calculated for the advancement of the object to be attained. And where the aim is broad, as here, so should be the interpretation.

A most cogent circumstance arising out of the inquiry is: What is the dominant purpose of the statute? To protect what? Why, credit. Upon what, then, is credit usually extended ·in such cases? Why, naturally, upon those wares and articles within a store, generally used, or apparently so used, in the ordinary prosecution of that particular business. That must necessarily include what are commonly known now to both the Courts and the mercantile world as "trade fixtures" and would necessarily exclude, except probably in exceptional cases, mules and horses. *Summerton Live Stock Co. v. Cleveland Mfg. Co.,* (1920) 103 S. E. 516, 114 S. C. 186.

To hold otherwise would be to leave unprotected, in many instances, as the case at bar amply verifies, much of the business world's credit, which there was an evident intention to protect, and thereby defeat to a large extent the true purpose of the statute.

The decisions from other States, construing like enactments, are many so contradictory as to lead one to no satisfactory conclusion. See notes and cases in 2 L. R. A. (N. S.) 331; 25 L. R. A. (N. S.) 758; 34 L. R. A. (N. S.) 218 45 L. R. A. 492, 495. Out of the general confusion, however, there emerges, though of the minority, the broad but sound conclusion of Justice Evans in *Cooney v. Sweat,* supra, that, "The word 'merchandise' is, however, not to be taken in such a restricted sense as to. exclude the usual and customary accessories of a mercantile or trading establishment when a sale in bulk is made of the whole. Thus, bar fixtures, safes, desks, cash registers, cigar cases, pool tables, refrigerators, and the like, used in connection with a business to which they are appropriate,

in facilitating the operation of such business and the sale of the goods connected therewith, have been held to be included in the sale of the business, within the meaning of the Sales In Bulk Act." To like effect are *Plass v. Morgan,* 36 Wash. 160, 78 Pac. 784; *Sakelos v. Hutchinson Bros.,* 129 Md. 300, 99 Atl. 357; *Seattle Brewing Co. v. Donofrio,* 34 Wash. 18, 74 Pac. 823; *Tupper v. Barrett,* 233 Mass. 565, 124 N. E. 427. See *Hartwell v. Ins. Co.,* 84 Me. 524, 24 Atl. 954.

Each of these cases, it is true, must be determined largely by its own peculiar facts rather than by any fixed rule, as some of the decisions hold. But that is not to say that a Court cannot, within certain well-conceived limitations, lay down definite rules of guidance, keeping before it the statute, its purpose, and the rules of construction heretofore indicated. In the instant case, I am persuaded that the sale of the articles in bulk, as represented by the bill of sale, was within Section 2434; so was the sale of the meat and ice tickets.

The next issue is: Was the statute complied with? The only attempt at compliance was by the purchaser in requiring the affidavit of the seller. But there was no inventory, stating the true value of the goods, made by the seller. Here, then, was not an attempt to comply with the requirements and a mere falling short in details, but separate and distinct provisions were utterly disregarded.

And that is reasonably so, since the principal purchaser testified that he knew nothing in fact of the statute. It is, however, claimed that the purchaser lived up to the only requirement of him, since he obtained the affidavit. But that is not sufficient. He was presumed to know that there were other duties for the seller to perform and that, in the event there should be no attempt at compliance with any one of such duties, there would arise a conclusive presumption of fraud. If he, upon demand, could not obtain compliance

on the part of the seller, then he bought in bulk at his risk. Such was the result in the instant case. *Bank v. Huey,* supra.

The issue of fraud being conclusive against the purchasers, they cannot seek to avail themselves of the equitable right of subrogation. Whatever interest they obtained by paying off the mortgage, was legally tainted with fraud. Equity can extend no aid. *Border State Lumber Co. v. Edwards,* 103 S. C. 391, 88 S. E. 537. It is contended, however, if there is any fraud here, it can only be presumed, and that there must be actual bad faith before equity will refuse to extend aid. Finely spun distinctions between the two should find no favor in equity. Fraud is fraud. The means of arriving at it cannot alter its character. The Court must presume the Legislature had good reasons for placing the badge of same upon certain Acts or ommissions and that it intended no difference between that fraud and any other.

It is therefore ordered, adjudged, and decreed that the plaintiff Enoch Smith have judgment against the defendant, J. E. Boyer, E. A. Johnson, and J. M. Whitton for the sum of $241.19 and the costs of this action; also that the plaintiff B. M. Dent likewise have judgment against the said defendants for the sum of $123.22 and the costs of this action, with the right on the part of either or both plaintiffs to move before this Court for such further orders, if any be necessary, as may be requisite for protecting their rights, under the statute in question.

*Messrs. Melton & Besler* and *R. E. Carwile,* for appellants, cite: *Case arises under* Secs. 2434-6, 1 Civ. Code 1912. *Statute in derogation of the Common Law and is to be strictly construed*: 176 Ind. 526; 96 N. E. 592; 133 Ga. 511, 512; 25 L. R. A. (N. S.) 758; 66 S. E. 257; 2 Ga. App. 453; 58 S. E. 783; 7 A. L. R. 1581; 12 R. C. L. 523. *Statute prohibits sale of "stock of merchandise"—not fix-*

*tures*: 92 Mass. 910; 5 Words & Phrases 4479; 37 Mass. 913; 6 Fed. 413-15; 37 Wash. 206; 79 Pac. 628; 2 L. R. A. N. S. 339; 25 L. R. A. (N. S.) 759; 101 S. E. 8 (N. C.); 7 A. L. R. 1581; 55 Iowa 520; 8 N. W. 334; Burwell's Law Dict. 2; A. L. R. 1584; 193 Mass. 106; 78 N. E. 772; 8 Ann. Cas. 1067; 204 S. W. 730 (Mo.); 163 Pac. 112 (Mont.). *Point not decided in this State*: 113 S. C. 333; 114 S. C. 189. *Presumption of Fraud under Statute is rebuttable*: 93 Md. 432; 95 N. W. 392 (Wis.); 82 Pac. 496 (Okla.); 2 L. R. A. (N. S.) 334; 61 Am. Dec. 73 (Ind.); 56 Am. Dec. 319 (Cal.); 5 La. Ann. 559; 6 Colo. 202; 2 Kan. 456; 99 Minn. 22; 108 N. W. 940, cited in 20 L. R. A. (N. S.) 166. *Fixtures have not been withdrawn:* 68 L. R. A. 284 (Wash.); 12 R. C. L. 529. *Equitable Subrogation:* Pom. Eq., Sec. 1211; 26 S. C. 33. *Constructive Fraud:* 200 Mass. 588:

*Messrs. Graydon & Graydon* for respondents.

April 28, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The two cases are identical in the facts, with the exception of the amounts of the claims of the creditors Smith and Dent; that of the former being $241.19, and of the latter $123.22. They were tried together in the County Court, and the appeals were argued together in this Court.

The defendant Boyer operated a meat market in the city of Columbia, and, at the time in question, had on hand a small amount of butcher's meat and certain adjuncts of the business, consisting of refrigerator, counter, cooler, sausage mill, scales, desks, registers, meat blocks, and similar articles, not for sale of course, but for use.

Desiring to retire from the business, Boyer advertised it for sale. The defendants Johnson and Whitton were attracted and opened negotiations which culminated in a con-

tract for the purchase of the "adjuncts" hereinbefore re-
ferred to, at the price of $1,025, on February 3, 1921.  A
bill of sale was prepared and executed by Boyer, covering
only the "adjuncts."  Boyer declared that "he owed no
man anything."  The purchasers insisted upon an affidavit
to that effect, which Boyer executed, stating in most em-
phatic terms that there were no claims of any kind against
the said property or against his business.  It appears that
later he verbally stated that there was a mortgage upon said
"adjuncts" for $1,000 in favor of his son.  Johnson &
Whitton thereupon closed the trade by paying off the mort-
gage of $1,000 and the balance, $25 in cash, to Boyer.  No
such inventory as is required by the Bulk Sales Act, § 2434,
Vol. 1. Code of Laws A. D. 1912, was prepared, nor notice
to creditors.  The next day, February 4, 1921, upon taking
possession, Johnson & Whitton purchased from Boyer the
butcher's meat on hand for $56 and ice tickets for $30. No
part of the "adjuncts" has been removed by the purchasers.
Thereafter the plaintiffs instituted these several actions at
law against Boyer and the purchasers, Johnson & Whitton,
upon open account due them, respectively, by Boyer while
conducting the business prior to the sale, alleging that the
sale was a "bulk sale" in violation of said section, null and
void, and made with intent to hinder, delay, and defraud
the creditors of Boyer; that for these reasons they were
severally entitled to judgment against the purchasers on
said accounts.  Boyer made default.  The purchasers,
Johnson & Whitton, answered, explaining the transaction as
above stated, and claiming, in the event that the sale should
be set aside, to be subrogated to the rights of the mortgagee,
whose mortgage of $1,000 they had paid off.

The case was tried by County Judge Whaley upon testi-
mony taken before him in open Court.  He filed a decree
(which will be reported) holding that the aforesaid "ad-
juncts," which he termed "trade fixtures," were merchan-

dise, within the meaning and purpose of the Act; that the sale, under the circumstances detailed, was in violation of the terms of the Act, and conclusively presumed to have been fraudulent; and that whatever interest the purchasers acquired by paying off the mortgage, was tainted with that fraud. He therefore refused the application of the purchasers to be subrogated to the rights of the mortgagee, under the mortgage which they had paid off, and rendered judgment against them upon the claims of the plaintiffs.

The questions which are presented by the exceptions for determination are: (1) Was the presiding Judge in error in holding that the "trade fixtures" (so called) were merchandise within the terms of the Act? (2) If they were, was the presiding Judge in error in refusing the application of the purchasers to be subrogated to the rights of the mortgagee in the mortgage which they had paid off? (3) Was the presiding Judge in error in rendering judgments absolute against the purchasers for the amounts of the plaintiff's claims?

As to the first question. The term "merchandise" has a clearly defined meaning: "All kinds of personal property usually bought and sold in trade or market by merchants." *27 Cyc. 477.* In the absence of a contrary intention appearing, it will be presumed that the Legislature intended to use the term in its common acceptation. So far from the appearance of a contrary intention, the Act itself discloses the intention to so use it; "It shall be unlawful for any merchant * * * engaged in the buying and selling of merchandise * * * to sell his * * * entire stock of merchandise in bulk, * * * otherwise than in the ordinary course of trade;" plainly referring to such articles only as he was accustomed to sell, in the ordinary course of trade. Such property as he may have acquired for the purpose of his business and which he did not expect to sell, cannot be

considered "merchandise," under the clear definition of the term and the words of the Act.

In the first place, the Act is in derogation of the Common law, which gives the owner the right to dispose of his property as he pleases, provided the transaction is free from a fraudulent purpose, and is subject to the rule which requires a strict construction of its terms. *Fairfield Co. v. Olds,* 176 Ind. 526, 96 N. E. 593; *Cooney v. Sweat,* 133 Ga. 511, 66 S. E. 257, 25 L. R. A. (N. S.) 758 (see, also, note to the case); *Taylor v. Folds,* 2 Ga. App. 453, 58 S. E. 683; *Swift v. Tempelos,* 178 N. C. 487, 101 S. E. 8, 7 A. L. R. 1581; 12 R. C. L. 523.

The overwhelming weight of authority is in support of the proposition that the term "merchandise" does not include articles kept wholly or partially for use in and about the building, but only articles for sale. *Burgess v. Company,* 92 Mass. (10 Allen )221; 5 Words & Phrases, 479; *Tisdale v. Harris,* 20 Pick. (Mass.) 9; the Marine City (D. C.) 6 Fed. 413; *Albrecht v. Cudihee,* 37 Wash. 206, 79 Pac. 628; *Everett Co. v. Smith,* 40 Wash. 566, 82 Pac. 905, 2 L. R. A. (N. S.) 331, 111 Am. St. Rep. 979, 5 Ann. Cas. 798; *Off v. Morehead,* 235 Ill. 40, 85 N. E. 264, 20 L. R. A. (N. S.) 167, 126 Am. St. Rep. 184, 14 Ann. Cas. 434; *Swift v. Tempelos,* 178 N. C. 487, 101 S. E. 8, 7 A. L. R. 1581; *Van Patten v. Leonard,* 55 Iowa, 520, 8 N. W. 334; *Gallus v. Elmer,* 193 Mass. 106, 78 N. E. 772, 8 Ann. Cas. 1067; *Independent Co. v. Lawton,* 200 Mo. App. 238, 204 S. W. 730; *Ferrat v. Adamson,* 53 Mont. 172, 163 Pac. 112; *Gallup v. Rhodes,* 207 Mo. App. 692, 230 S. W. 664. The question is suggested but not decided in *Bank v. Huey,* 113 S. C. 333, 102 S. E. 516, and is practically decided in conformity with the foregoing decisions in *Summerton Co. v. Cleveland,* 114 S. C. 189, 103 S. E. 516.

So far as the second sale is concerned, that of the meat on hand at $56 and the ice tickets $30: The purchasers are liable to account to creditors for the $56, but not for the ice tickets, as they were not intended to be sold, but used; and for neither, in this action, as will be shown.

As to the second question. Assuming that the trial Judge was right in his application of the Act to the facts of this case, the purchasers were clearly entitled to be subrogated to the rights of the mortgagee in the mortgage of $1,000, which they had paid off. See Pom. Eq. §§ 1211, 1213; *Sutton v. Sutton,* 26 S. C. 33, 1 S. E. 19, and the authorities cited by the writer in his opinion on petition for rehearing, in the case of *Prudential Investment Company v. Smoak,* recently filed. 111 S. E. ———. There is no question as to the validity of that mortgage or of the fact of payment. To allow the purchasers to be subrogated will not in any wise prejudice the rights of creditors whose claims necessarily were subordinate to the mortgage. The reason given by the trial Judge for denying the right of subrogation, that the sale was presumed conclusively to be fraudulent, is unsound. The Act provided for only a prima facie presumption of fraud, and this Court had held, in the case of *Bank v. Huey,* 113 S. C. 333, 102 S E. 516, that, where an effort has been made to comply with the Act, the question of fraud is open. And even if it be held that the sale was fraudulent simply because it was in violation of a technical statute, there is no ground in justice that one, who without moral obliquity has been caught upon the horns of the law, should lose everything, particularly where his act has not in the slightest degree affected the interests of creditors.

As to the third question. The trial Judge had no authority to render an absolute judgment against the purchasers. The Act provides that, if the merchandise or any part of it be found in possession of the purchas-

er, it (the property, not the purchaser) shall be liable to the creditors. The record shows that all of the so-called fixtures are now in the possession of the purchasers. The only way in which they could be reached is by an equitable action in behalf of creditors to subject them to the payment of the claims of creditors, not by an action at law against the purchasers. It does not appear whether there are other creditors of Boyer or not. Certainly a single creditor cannot maintain an action at law against the purchaser, even if he be the only creditor, where the purchaser has not disposed of the property.

In truth, the complaint was subject to demurrer in not declaring, in the action at law, that the purchasers had disposed of merchandise; for, by the express terms of the statute, no personal judgment can be obtained against the purchaser, except to the extent of the value of merchandise received by him and withdrawn, that is, disposed of. Furthermore when the evidence showed that the purchasers were still in possession of the property acquired under the alleged void sale, the remedy of the creditors was in equity against the property, and the action at law should have been dismissed on non-suit.

For these reasons the judgment is reversed, and the complaint dismissed.

MR. JUSTICE FRASER AND MR. JUSTICE MARION concur.

MR. JUSTICE WATTS (dissenting) : For the reasons assigned by County Judge Whaley, and the additional reason that no motion was made to allow the pleadings amended so as to make it an equitable proceeding, to appoint a receiver, the judgment of this Court should be that the judgment of the County Court be affirmed.

MR. CHIEF JUSTICE GARY concurs.