39546.   SUGGS v. BROTHERHOOD OF LOCOMOTIVE
FIREMEN & ENGINEMEN et al.

DECIDED SEPTEMBER 20, 1962.

564

*J. Neely Peacock, Jr.*, for plaintiff in error.

*Divine & Busbee, George D. Busbee, Julian C. Sipple,* contra.

FELTON, Chief Judge. ■ It was not error for the trial court to overrule the plaintiff's demurrers to the defendants' amendments. A litigant may at any stage of the cause amend his pleadings either in form or substance. *Code Ann.* § 81-301. It will be shown in another division of this opinion that article 30 of the firemen's employment agreement was applicable in this case.

■ The overruling of the defendants' first motions for summary judgments was not a bar to their second motions for the reason that the first motions did not require a decision as to the applicability of article 30 of the employment agreement since that defense was not properly pleaded, whereas, the second motions did raise this issue. "Where the second motion for summary judgment is based on matters not involved in the decision on the first motion, 'the law of the case' is not involved. Breeland v. Southern Pacific Co. (CA 9th, 1955) 231 F2d 576, 22 FR Serv. 56 c. 55, Case 1." 6 Moore, Fed. Practice (2d Ed., 1961 Supp.) Par. 56.14, p. 70; Beedy v. Washington Water Power Co., 238 F2d 123 (1956) (9th Cir.). ". . . If a motion for summary judgment is unsuccessful, the court has the power to permit a second motion for summary judgment prior to trial, when a proper showing therefor is made." 6 Moore, op. cit., Par. 56.08, p. 2048.

■ The court did not err in granting the defendants' motions for summary judgment after having allowed the defendants'

amendments to the answers based on the provisions of article 30 of the firemen's employment agreement specified as grounds of the motions for summary judgments. This question was not adjudicated on the prior appeal of this case for the reason that article 30 was not pleaded by the defendants and was not made a ground of the motions for summary judgments. The part of article 30, above referred to, containing the contractual limitation is as follows: Article 30(c): "All claims or grievances involved in a decision of the highest officer shall be barred unless within twelve (12) months from the date of said officer's decision proceedings are instituted by the employee or his duly authorized representatives before a tribunal having jurisdiction pursuant to law or agreement of the claim or grievance involved. It is understood, however, that the parties may by agreement in any particular case extend the twelve-months' period herein referred to." The construction of an unambiguous contract is a question of law for the court. *Code* § 20-701. Although the title of article 30 in the employment contract is "Time Claims," to' restrict the provisions of the article to merely claims for back pay due would be to disregard the phrase "all claims or grievances" in the body of the article. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." *Code* § 20-704(4). The title, not being in truth a part of the article, cannot be used to throw light on or to vary the unambiguous language of the body of the contract. It would seem that the statutory construction rule would apply here. See *Code Ann.* § 102-102, catchword "Title." This article is the only article in the contract which provides for limitations of *actions* involving grievances, as distinguished from purely administrative procedures for appeal. "Grievances" includes illegal discharge. It is obvious that the title to this article was shortened by inadvertence or mistake and that the true title of the article should be "Time Limit on Claims" as the title appears in Section 17 in the agreement of August 11, 1948, published by the Eastern, Western and Southeastern Carrier's Conference Committees and the various brotherhoods, Section 17 of said agreement being identical with article 30 of the agreement

between the Firemen and the Central of Georgia Railway Company. The plaintiff contends that article 31 of the employment contract governs instead of article 30. Article 31(b) is as follows: "Discipline will be applied within 30 days after notice. No complaints or appeal will be entertained unless presented in writing to the superintendent within 30 days after its occurrence. Enginemen shall have the right to appeal provided such appeal is made in writing within 30 days after the superintendent has rendered his decision." This provision is unquestionably a time limit on *administrative appeals* within the machinery of the provisions of the contract between the union and the railroad. Before an action at law could be filed under article 30, the highest officer of the railroad designated to handle claims must have made a decision on the administrative appeal. The time limit on the *administrative appeal* is 30 days from the time when the *superintendent of the railway company* notifies the employee that his employment is at an end. The highest officer of the Central of Georgia Railway Company designated to handle claims was Mr. W. J. Collins. On June 27, 1955, Mr. E. C. Glenn, superintendent of the railway company, notified the plaintiff in writing that he had been discharged by the brotherhood for failing to pay his dues and that pursuant to article 31 of the firemen's agreement he was entitled to an investigation if he so desired, and that in the event the plaintiff failed to request an investigation he would be considered out of the service of the railway company effective July 5, 1955. It was stipulated that the plaintiff did not request an investigation within the time allowed. The plaintiff does not show by counter-affidavit or otherwise that he filed an appeal within 30 days or inquired as to whether the brotherhood would do so. On July 6, 1955, Mr. Glenn wrote plaintiff again advising him that he was considered out of the service effective July 6, 1955, since plaintiff had failed to request an investigation. On July 19, 1955, Mr. A. B. Healan, one of the general chairmen of the brotherhood, on behalf of the plaintiff and at his instance and request wrote to Mr. Glenn requesting that the plaintiff be reinstated by the company. In response to this letter Mr. Glenn wrote to Mr. Healan refusing to reinstate the plaintiff to his employment and sent a copy of

the letter to the plaintiff. On August 7, 1955, Mr. Healan wrote Mr. Collins requesting that the plaintiff be reinstated and stated that the decision of Superintendent Glenn discharging the plaintiff was not acceptable and that he desired to discuss same with Mr. Collins at their next conference. On September 15, 1955, Mr. Collins, the highest officer of the railway company designated to handle claims and grievances, wrote Mr. Healan and declined to request that the plaintiff be reinstated in his job. On November 22, 1955, a conference concerning plaintiff's discharge took place in Savannah, Georgia, in pursuance of plaintiff's request of a review of his claim, between W. J. Collins, director of labor relations of the railway company; Thomas Parker, Jr., assistant director of personnel of the railway company; W. E. Mitchell, vice-president of the brotherhood; A. B. Healan, general chairman of the brotherhood; and E. H. Bennett, local chairman of the brotherhood. Mr. Collins informed the representatives of the brotherhood that the railway had acted at the request of the brotherhood and had followed in all respects the provisions of the union shop agreement and the contract between the railway company and the brotherhood. After this statement by Mr. Collins, W. E. Mitchell, vice-president of the brotherhood, stated to Mr. Collins that the railway company could consider the request as being withdrawn, which he did. The union shop agreement required a request for an investigation by the plaintiff for the administrative machinery to get into operation if the union shop contract applied to plaintiff. If the union shop agreement did not apply, a request for an investigation was not necessary but the plaintiff or his representative was required to file an appeal within 30 days from the date of discharge. It seems inescapable that by the conduct of all concerned the failure of the plaintiff to request an investigation in due time and the failure of the plaintiff or union to appeal plaintiff's claim in 30 days was waived and the appeal by the officers of the brotherhood of the plaintiff's grievance was discussed and considered by the officer of the railway company who had authority to act on it. This is the conclusion most favorable to the plaintiff. These officers of the brotherhood who pressed the appeal for the plaintiff withdrew the request for reinstatement at the above mentioned

conference on November 22, 1955, which was equivalent to a dismissal or withdrawal of the appeal. This constituted final action by Mr. Collins who approved the withdrawal of the claim. In these circumstances the latest effective date of the discharge of the plaintiff by the railway company would be November 22, 1955, and the time limit of one year, within which the plaintiff could appeal his alleged improper discharge either to the Railway Labor Adjustment Board or institute an action at law in a court, began to run, and since the present action was filed on May 13, 1959, the action was barred by the contractual limitation contained in article 30. The plaintiff does not show by counter-affidavit or otherwise that he did not have knowledge of the withdrawal of his claim immediately after it was withdrawn and he did not allege or prove by counter-affidavit or otherwise that he was deterred from filing the present action by the fraud of either defendant. See *Code* § 3-807. If we assume for the sake of argument that the union shop agreement between the railroad and the brotherhood did not affect the plaintiff because he was on leave of absence at the time of his discharge it would not affect the result in this case for the reason that the contractual limitation is not a part of the union shop agreement but is a part of the employment contract, which did apply to the plaintiff, and any action based on an improper discharge gave rise to a cause of action whether the plaintiff was on the job or on a leave of absence and he was required to file his action within 12 months of November 22, 1955, at the latest. Whether the plaintiff was on leave of absence or not, under the facts his claim was barred by his not having filed this action earlier, as above shown.

The contention of the plaintiff that the contractual limitation provided for in the contract would only be applicable to a proceeding before the National Railway Adjustment Board is without merit. Hilton v. Norfolk & Western Rwy. Co., 194 FSupp. 915 (1961) (S.D. W.Va.); Breelan v. Southern Pac. Co., supra; Hooser v. Baltimore & Ohio R. Co., 177 FSupp. 186, 279 F2d 197.

The plaintiff in error seeks to distinguish the instant case from the Hooser case on the basis that the Hooser case was brought directly upon the contract of collective bargaining and

the instant case is an action in tort based upon an alleged conspiracy to violate the rights of the plaintiff conferred by the bargain agreement. The case of Sams v. Brotherhood of Ry. & Steamship Clerks, 166 FSupp. 49, 53, 233 F2d 263 is a sufficient reply to this contention in which the court stated: "Plaintiff contends that his suit is not one for breach of contract of employment but rather is a suit for tort based upon the alleged unlawful termination of his employment by Express Agency and an alleged conspiracy between the Brotherhood and its officers and Express Agency to bring about termination. It is well established that in the absence of a contractual or statutory limitation an employer in South Carolina may terminate an employment at his pleasure and without cause and that such termination will not give rise to a cause of action by the employee. Johnson American Railway Express Co., 1931, 163 S.C. 191, 161 S.E. 473; Marshall v. Charleston & W.C.R. Co., 1931, 164 S.C. 283, 162 S.E. 348. Nor is plaintiff helped by alleging that the termination was the result of a conspiracy between the Brotherhood and Express Agency since it is well settled in South Carolina that a conspiracy is the conspiring together of persons to do an unlawful act to the detriment of another or the doing of a lawful act in an unlawful way to the detriment of another. Charles v. Texas Company, 1939, 192 S.C. 82, 5 S.E. 2d 464. This is the rule followed generally by all courts. Lambert v. Georgia Power Company, 1936, 181 Ga. 624, 183 S.E. 814. Plaintiff has not alleged nor shown any statutory limitation upon Express Agency's freedom to terminate his employment at will. Consequently, whether plaintiff labels his cause of action one for breach of contract or one in tort, it is clearly necessary for him to show that the termination was in violation of his contract of employment with Express Agency."

The facts related in this opinion are taken from the pleadings and affidavits and depositions for and against the motions for summary judgments.

The court did not err in rendering any of the judgments excepted to.

*Judgments affirmed. Bell and Hall, JJ., concur.*