1868

CROSSWELL ENTERPRISES, INC., Appellant v. Joe ARNOLD
and Moore's Quality Snack Foods, Inc., Respondents.

(422 S.E. (2d) 157)

Court of Appeals

*Hal J. Warlick* and *Bryan D. Ramey*, of *Warlick Law Office*, Easley, *for appellant.*

*G. Ray Harris*, Spartanburg, *for respondents.*

Heard March 16, 1992.

Decided Aug. 10, 1992.

BELL, Judge:

This is an *in personam* action brought under the Bulk

Transfers Act of South Carolina's Uniform Commercial Code[1] to collect $4,386.01 owed to Crosswell Enterprises, Inc., by Southern Style Snacks, Inc. Joe Arnold was the owner of Moore's Quality Snack Foods, Inc. and the transferee of certain assets of Southern. Crosswell asserts that Arnold and Moore's should be personally liable for Southern's debt, because they failed to notify Crosswell of the transfer as required under S.C. Code Ann. § 36-104. The circuit court granted Arnold's motion to dismiss Crosswell's claim pursuant to Rule 12(b)(6), SCRCP, holding that the creditor's sole remedy under the Bulk Transfers Act is an action *in rem* or levy on the inventory and equipment transferred. Crosswell appeals. We affirm.

Crosswell is a manufacturer and supplier of packaging materials. In June and August of 1988, Southern purchased a quantity of cardboard shipping cartons and merchandise display items from Crosswell for an agreed price of $4,386.01. Although the goods were delivered to Southern's manufacturing plant at Camp Croft, South Carolina, purchasing and billing were handled through Southern's principal place of business in Texas. Southern never paid Crosswell for the goods. On October 31, 1988, Southern sold the Camp Croft business and its assets to Arnold. No notice of this sale was given to creditors of Southern. On December 2, 1988, Crosswell filed suit against Southern for nonpayment of the $4,386.01 and obtained a default judgment on February 2, 1989. Upon the levy and execution being returned *nulla bona* on March 23, 1989, Crosswell learned for the first time that Southern had transferred its Camp Croft assets to Arnold. On June 18, 1989, Crosswell filed this action against Arnold and Moore's. The next day, Arnold sold the business and its assets to Borden's, Inc., which now operates Moore's as a subsidiary. No notice of the sale to Borden's was given to creditors.

## I.

The first question presented for our review is whether the circuit court erred in dismissing the action on Arnold's motion after another circuit judge had denied a prior motion by Arnold for summary judgment.

---

[1] S.C. Code Ann. § 36-6-101 *et. seq.* (1976).

Although the motion to dismiss was made under Rule 12(b), SCRCP, the circuit court appropriately treated the proceeding as one for summary judgment, because the motion was supported by matters outside the pleadings. *Brown v. Leverette*, 291 S.C. 364, 353 S.E. (2d) 697 (1987). The parties were afforded a reasonable opportunity to introduce evidentiary matters in accordance with Rule 56(c) and (e). The court also had before it the prior order of another circuit judge denying an earlier motion by Arnold for summary judgment. The ground for Arnold's original motion for summary judgment was that the transfer from Southern to Arnold was not a "bulk transfer" within the meaning of the Act. The ground for the later motion to dismiss was that a creditor's sole remedy under the Act is to disregard the transfer and levy on the goods in the hands of the transferee. Thus, the original motion was decided on a different ground from the later motion.

The denial of a motion for summary judgment does not bar a party from making a later motion for summary judgment based on matters not involved in the decision on the first motion. *See Suggs v. Brotherhood of Locomotive Firemen & Enginemen*, 106 Ga. App. 563, 127 S.E. (2d) 827 (1962). If the first motion for summary judgment is unsuccessful the court has the power to permit a second motion for summary judgment prior to trial. *Id.* Accordingly, the judge had the power to hear and rule on Arnold's second motion concerning a creditor's remedy under the Act.

## II.

The second question is whether a creditor may seek a money judgment against a transferee who fails to comply with the Bulk Transfers Act if the transferred assets are no longer in the transferee's hands. This is a question of first impression in South Carolina.

The Bulk Transfers Act applies to all enterprises whose principal business is the sale of merchandise from stock, including those who manufacture what they sell. S.C. Code Ann. § 36-102 (1976). A bulk transfer is a transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise, or other inventory of an enterprise. S.C. Code

Ann. § 36-6-102(1) and 9-109(4) (1976) (defining inventory); *cf. Bergen, Johnson and Olson v. Verco Manufacturing Co.*, 690 S.W. (2d) 115 (Tex. Ct. App. 1985).

Southern sold all materials, supplies, merchandise, ■ equipment, and inventory located in its Camp Croft plant to Arnold. This sale was not in the ordinary course of Southern's business. It is irrelevant that Southern may have had other inventory located outside of South Carolina, or that the inventory located in South Carolina was allowed to dwindle in anticipation of the sale. Whatever inventory existed in South Carolina was sold. When a business which manufactures and sells a product is sold lock, stock, and barrel, it is a bulk transfer within the meaning of § 36-6-102. *See Nichols Motorcycle Supply, Inc. v. Regency Kawasaki, Inc.*, 295 S.C. 138, 367 S.E. (2d) 438 (Ct. App. 1988).

Under the common law, restraints on the alienation of ■ property were disfavored and generally the owner of property could dispose of it as desired. *See, Smith v. Boyer*, 119 S.C. 176, 112 S.E. 71 (1922). Although fraudulent transfers of property to defeat creditors could be set aside in equity or by statute,[2] generally, a creditor could not reach property in the hands of a good faith purchaser for value with no notice of the creditor's interest. *See, London v. Youmans*, 31 S.C. 147, 9 S.E. 775 (1889); *Goodwin v. Harrison*, 231 S.C. 243, 98 S.E. (2d) 255 (1957). Bulk Sales Acts were enacted to protect unsecured creditors of a merchant who sells a major portion of his inventory not in the usual course of business for adequate consideration. As enacted in South Carolina, the Bulk Sales Act gave creditors of one who made a bulk sale of merchandise a right to pursue the property in the hands of the purchaser if the purchaser had not complied with the Act. *See,* Act No. 1, 1906 S.C. Acts 1 codified as S.C. Code of 1912 § 2434 (Civ. Code). In such cases, if any of the transferred property was still in the hands of the purchaser, it could be reached by the creditor to satisfy the debt. *See, id; Smith v. Boyer, supra*. If the purchaser had withdrawn the property so it was no longer in his hands, then the purchaser himself was personally liable to the creditor of the seller to the extent of

---

[2] *See, M'Meekin v. Edmonds*, 10 S.C. Eq. (1 Hill Eq.) 125 (1833); S.C. Code Ann. § 27-23-10 (1991).

the value of the property transferred and withdrawn. *See, National City Bank v. Huey & Martin Drug Co.*, 113 S.C. 333, 102 S.E. 516 (1919). The purchaser was not personally liable if the property was still in his hands. *Smith v. Boyer, supra.*

When the South Carolina General Assembly adopted the Bulk Transfers provisions of the Uniform Commercial Code in 1966, it repealed the provisions of the Bulk Sales Act. *See*, Section 10-103, Act No. 1065, 1966 S.C. Acts 4281. In place of the remedies created by the former statute, the new legislation provided that a bulk transfer is ineffective against any creditor of the transferor unless the certain requirements are satisfied. *See*, S.C. Code Ann. § 36-6-104. If the bulk transfer is made in violation of the statutory requirements, the creditor may disregard the transfer and levy on the goods as still belonging to the transferor. *See*, S.C. Code Ann. § 36-6-104 (1976) Official Comment 2; *Siva Truck Leasing, Inc. v. Kurman Distributors*, 166 Wis. (2d) 58, 479 N.W. (2d) 542 (1991). However, unlike the former statute, the Uniform Commercial Code makes no provision for the creditor to hold the transferee personally liable to the extent of the value of the transferred property if the property is no longer in his hands.

There is persuasive evidence that the Legislature intended to limit the remedy under the Bulk Transfers Act to *in rem* proceedings. South Carolina did not adopt the optional provision of the Uniform Commercial Code § 6-106, which holds the transferee personally liable to the creditors for noncompliance with the Bulk Transfers Act. *See*, U.C.C. § 6-106, 2C U.L.A. 29 (1991). Instead, our Legislature adopted only § 36-6-104 which, as noted above, provides that noncompliance results in the transfer being "ineffective" against any pretransfer creditor of the transferor. The comments to §§ 36-6-104 and 6-111 state that this means the creditor may "disregard the transfer and levy against the goods," and that "a judgment creditor may levy execution on the property." If the transferee wishes to cure a failure to comply with the Act, he can pay off the unpaid creditor and thereby avoid a levy on the transferred property. *See*, S.C. Code Ann. § 36-6-104 (1976) Official Comment 2.

Had the Legislature intended to expand a creditor's remedies to include personal liability on the part of a noncomplying

transferee, it could have inserted language which plainly granted that recourse, as it did in the former statute. In the absence of such a provision, we conclude the General Assembly did not intend a noncomplying transferee to be personally liable to the creditors of the transferor.[3]

Since an *in personam* action against a noncomplying transferee is not one of the remedies available under the Bulk Transfers Act of South Carolina's Uniform Commercial Code, Crosswell failed to state a cause of action for which relief can be granted.

In view of our holding, we need not address the issue of whether Crosswell complied with the statute of limitations set forth in S.C. Code Ann. § 36-6-111 (1976).

Affirmed.

GARDNER and CURETON, JJ., concur.

---

[3] Other courts are in agreement with this conclusion. *See generally, American Express Co. v. Bomar Show Co.*, 125 Ga. App. 408, 187 S.E. (2d) 922 (1972); *Bill Voorhees Co., Inc. v. R & S Camper Sales of Birmingham, Inc.*, 605 F. (2d) 888, 27 U.C.C. Rep. Serv. 789 (1979); *Get it Kwik, Inc. v. First Alabama Bank, N.A.*, 361 So. (2d) 568, 24 U.C.C. Rep. Serv. 944 (Ala. Ct. App. 1978); and *Anderson & Clayton v. Earnest*, 610 S.W. (2d) 846, 30 U.C.C. Rep. Serv. 1636 (Tex. Civ. App. Ct. 1980).