SCOTT GOINS *et al.*, Plaintiffs-Appellants, v. MERCY CENTER FOR HEALTH CARE SERVICES *et al.*, Defendants-Appellees.

Second District No. 2—95—1155

Opinion filed June 19, 1996.

Michael W. Clancy, of Clancy, Higgins & Clancy, Ltd., and George E.

Krippner, of Law Offices of George E. Krippner, both of St. Charles, for appellants.

Nancy G. Lischer, of Hinshaw & Culbertson, of Chicago, and Adam S. Kreuzer, of Hinshaw & Culbertson, of Lisle, for appellees.

JUSTICE RATHJE delivered the opinion of the court:

Plaintiffs, Scott Goins and his wife, Penny, appeal from an order of the circuit court which dismissed with prejudice their six-count amended complaint against defendants, Mercy Center for Health Care Services (Mercy Center), Joan Reynolds (Reynolds), and Mary Curley (Curley). Counts I through IV alleged that Reynolds and Curley had committed various intentional torts against Scott. Count V alleged that Curley had committed intentional infliction of emotional distress against Penny. Count VI alleged various violations of the AIDS Confidentiality Act (Confidentiality Act) (410 ILCS 305/1 *et seq.* (West 1992)) against Mercy Center. Based upon its finding that the exclusive remedy provisions of the Workers' Compensation Act (820 ILCS 305/5(a), 11 (West 1992)) barred recovery on all six counts, the trial court granted defendants' motion to dismiss.

On appeal, plaintiffs contend (1) that the exclusive remedy provisions of the Workers' Compensation Act do not bar an employee from bringing civil actions based on common-law intentional torts against co-employees; and (2) that the exclusive remedy provisions do not preclude an employee and his spouse from bringing a civil action pursuant to the Confidentiality Act.

■ Initially, we address defendants' motions to strike a portion of plaintiffs' reply brief and for leave to cite additional authority, which were ordered taken with the case.

Defendants' motion to strike contends that plaintiffs' reply brief improperly suggests that the trial court was told that plaintiffs would be naming additional parties to the amended complaint. Defendants maintain that the relevant record of proceedings is not in the record. Accordingly, they argue that there is insufficient support in the record for plaintiffs' suggestion and that any doubts arising from the incompleteness of the record must be resolved against the plaintiffs. In response, plaintiffs assert that the order of July 12, 1994, which is in the record, supports the disputed portions of the reply brief.

In essence, we find the arguments relative to this motion are very similar to the arguments which this court addresses in regard to the first issue raised by plaintiffs. To avoid repetition, we deny defendants' motion to strike portions of the reply brief. Having so found, we deny defendants' motion for leave to cite additional author-

ity. The cases cited are used to support defendants' motion to strike portions of the reply brief.

Plaintiffs' amended complaint made the following general allegations. On March 1, 1993, Scott was employed by Mercy Center as a security officer. During his shift on this date, he was summoned to the Mercy Center emergency room by nurse Reynolds. When Scott arrived at the emergency room, he observed a female patient, who was later identified as Annette Sandberg, lying in a patient bed. Scott saw blood in the vicinity of Sandberg's arm or hand, and it appeared that she had pulled out or dislodged her intravenous catheter. Reynolds directed Scott to affix a restraint on Sandberg's arm. Though Reynolds knew that Sandberg was Human Immunodeficiency Virus (HIV) positive and Hepatitis B positive, she did not tell Scott anything about Sandberg's medical condition.

While Scott was kneeling near the head of the bed to secure the restraint, Reynolds was working in the vicinity of Sandberg's arms. Shortly after Scott began to secure the restraint, he heard Reynolds utter an exclamation. He looked in her direction and was hit in the right arm by the intravenous catheter, which Reynolds threw in his direction. Drops of Sandberg's blood from the catheter came in contact with Scott's right eye.

Scott was subsequently treated in Mercy Center's emergency room for his injury. Thereafter, he was told that Sandberg "was HIV positive, a Hepatitis B carrier, and had herpes." Scott was given a prophylactic course of Zidovidine (AZT) in order to lessen the chance that he would contract the AIDS virus. His blood was drawn for the purpose of HIV testing.

On approximately March 3, 1993, Scott was told by employee health nurse Curley that Sandberg had tested negative for the HIV virus. On or about March 4, 1993, Scott was told by Curley that she had been mistaken the previous day and that Sandberg had actually tested positive for the HIV virus. Curley also told him that he had tested negative for the HIV virus.

On approximately March 8, 1993, Scott received a telephone call from Elaine DeHaan, his direct supervisor and Mercy Center's assistant manager of human services. DeHaan told him that she had spoken with Curley and that the latter had informed her that Scott was HIV positive. DeHaan offered to do whatever she could to help and stated that she would tell Scott's co-employees that he would not be in to work for a while. Scott immediately told this information to his wife, Penny. Several hours later on March 8, 1993, Scott talked with Curley, who said that DeHaan had misunderstood part of their conversation and that Scott's HIV test was actually negative. Within

a week, after the subject incident, Scott was informed that Sandberg had died of "AIDS or AIDS-related complications."

Count I alleged that Reynolds committed battery against Scott by striking him with an intravenous catheter. Count II alleged that Reynolds intentionally inflicted emotional distress upon Scott. Count III alleged that Reynolds intentionally inflicted emotional distress upon Penny. Count IV alleged that Curley intentionally inflicted emotional distress upon Scott. Count V alleged that Curley intentionally inflicted emotional distress upon Penny. Finally, count VI alleged that Mercy Center was vicariously liable for numerous violations of the Confidentiality Act by Mercy Center employees against both plaintiffs.

Specifically, count VI alleged:

"Mercy Center violated the [Confidentiality Act] and disclosed [Scott's] identify [sic] as someone who had been tested for the AIDS virus and, in some instances, the results of that test, in at least the following ways:

a.) putting his name on his prescription bottle of AZT at the hospital pharmacy instead of a confidential number as required by hospital policy;

b.) Ms. Curley left him notes regarding this situation on [Scott's] desk;

c.) Ms. Curley discussed [Scott's] AIDS test results with M. De-Haan;

d.) the incident was written up in the Mercy Center Security Report which was distributed to other employees;

e.) on information and belief, Ms. Curley discussed [Scott's] condition and AIDS test results with other Mercy Center Employees.

Mercy Center's actions as alleged were negligent, reckless, or both."

Plaintiffs first contend that the trial court erred in granting defendants Curley and Reynolds' motion to dismiss counts I through V based upon the exclusive remedy provisions of the Workers' Compensation Act.

Defendants Curley and Reynolds initially argue that this court lacks jurisdiction over this portion of the instant appeal. Specifically, they maintain that plaintiffs failed to obtain leave to add them as defendants in the amended complaint. They contend that, as to them, the complaint is a nullity.

In response, plaintiffs argue that the language of the trial court's order permitted the filing of an amended complaint and clearly contemplated the filing of an amended complaint that would name multiple defendants.

■ Initially, we note that a party does not have an absolute right to amend pleadings. *First Robinson Savings & Loan v. Ledo Construction Co.*, 210 Ill. App. 3d 889, 892 (1991). Because there is no absolute right to amend, a party must *seek and obtain* the trial court's permission to file a proposed amendment. *First Robinson Savings & Loan*, 210 Ill. App. 3d at 892. Moreover, where leave is granted to amend a complaint, but plaintiffs do not obtain leave to add additional and specified defendants, then the complaint is a nullity as to the additional defendants. *Callaghan Paving, Inc. v. Keeneyville Construction Co.*, 197 Ill. App. 3d 937, 939 (1990).

There is no transcript or report of proceedings for the subject hearing held on July 12, 1993, regarding Mercy Center's motion to dismiss plaintiffs' petition for discovery. The trial court's order filed on the same date states in relevant part:

"1) Plaintiffs granted 28 days to file an amended pleading. Plaintiffs are specifically given leave to identify by name and medical condition(s) the individual whose identity and medical records were the subject of the petition for discovery in their amended pleading.

2) Defendants granted 28 days to answer or otherwise plead in response to plaintiffs' amended pleading."

■ Without the benefit of a transcript or report of proceedings, we are unable to determine whether the trial court intended to permit the addition of Reynolds and/or Curley as defendants in an amended complaint. The language in paragraph 1 of the subject order is too vague to determine the identity of the "individual" being described. Without more specificity, we find that plaintiffs did not obtain the requisite permission to add Reynolds and Curley as defendants in the amended complaint. *Callaghan Paving*, 197 Ill. App. 3d at 940. Accordingly, we find that plaintiffs' amended complaint is a nullity as to defendants Curley and Reynolds and that counts I through V of the amended complaint must be disregarded on review. *Callaghan Paving*, 197 Ill. App. 3d at 940.

Further, we are not persuaded by plaintiffs' argument that Curley's and Reynolds' conduct during these proceedings, *e.g.*, filing appearances and making motions to dismiss, effectively bars their contentions as to jurisdiction. Unlike errors that can be waived, the error of filing a pleading without leave of the court is jurisdictional, and it is not waived if a party fails to raise it in the trial court. *Callaghan Paving*, 197 Ill. App. 3d at 940.

Plaintiffs next generally argue that the exclusive remedy provisions of the Workers' Compensation Act do not preclude an employee and his spouse from bringing a civil cause of action pursuant to the

Confidentiality Act. Plaintiffs argue, *inter alia*, that the "dual capacity doctrine" (doctrine) supports their contention that their Confidentiality Act claim is not barred by the Workers' Compensation Act's exclusive remedy provisions. Thus, they maintain that the trial court improperly dismissed count VI, which alleged Mercy Center's vicarious liability for negligent and reckless violations of the Confidentiality Act by certain of Scott's co-employees.

In response, Mercy Center generally maintains the trial court properly held the exclusive remedy provisions bar any action against defendant based upon the Confidentiality Act. Regarding the doctrine, Mercy Center contends that it does not apply to these facts.

Initially, we note that this cause comes before us in the pleadings. As a result, Mercy Center's motion to dismiss admits all well-pleaded facts and inferences. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 232 (1980).

■ Sections 5(a) and 11 of the exclusive remedy provisions of the Workers' Compensation Act read in relevant part:

"§ 5. (a) No common law or statutory right to recover damages from the employer *** or the agents or employees *** for injury *** sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him *** or any one otherwise entitled to recover damages for such injury.

\* \* \*

§ 11. The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act." 820 ILCS 305/5(a), 11 (West 1992).

■ Sections 2, 9, and 13 of the Confidentiality Act read in relevant part:

"§ 2. The General Assembly finds that:

(1) The use of tests designed to reveal a condition indicative of Human Immunodeficiency Virus (HIV) infection can be a valuable tool *in protecting the public health.*

(2) Despite existing laws, regulations and professional standards which require or promote the informed, voluntary and confidential use of tests designed to reveal HIV infection, many members of the public are deterred from seeking such testing because they misunderstand the nature of the test or fear that test results will be disclosed without their consent.

(3) The public health will be served by facilitating informed, voluntary and confidential use of tests designed to reveal HIV infection.

\* \* \*

§ 9. No person may disclose or be compelled to disclose the identity *of any person* upon whom a test is performed, or the results of such a test in a manner which permits identification of the subject of the test \*\*\*.

\* \* \*

§ 13. *Any person aggrieved by a violation of this Act or of a regulation promulgated hereunder shall have a right of action in the circuit court* and may recover for each violation:

(1) Against *any person* who negligently violates a provision of this Act or the regulations promulgated hereunder, liquidated damages of $1000 or actual damages, whichever is greater.

(2) Against any person who intentionally or recklessly violates a provision of this Act or the regulations promulgated hereunder, liquidated damages of $5000 or actual damages, whichever is greater." (Emphasis added.) 410 ILCS 305/2, 9, 13(1), 13(2) (West 1992).

"Person" is defined by the Confidentiality Act as "any natural person, partnership, association, joint venture, trust, governmental entity, public or private corporation, health facility or other legal entity." 410 ILCS 305/3(h) (West 1992).

■ Recently, the court in *Dalton v. Community General Hospital*, 275 Ill. App. 3d 73 (1995), described the doctrine thusly:

"Section 5(a) states that the Workers' Compensation Act provides the exclusive means of compensation for injury or death sustained by a covered employee 'while engaged in the line of his duty as such employee.' [Citation.] An employer normally shielded from tort liability by the exclusive remedy principle may be liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer. [Citation.] Under this dual-capacity doctrine, the decisive test is 'whether the employer's conduct in the second role or capacity has generated obligations that are unrelated to those flowing from the company's or individual's first role as an employer.' " 275 Ill. App. 3d at 75-76, quoting *McCormick v. Caterpillar Tractor Co.*, 85 Ill. 2d 352, 357 (1981).

It is useful to review how other courts have applied the doctrine. In *McCormick v. Caterpillar Tractor*, 85 Ill. 2d 352, wherein the

supreme court first recognized the doctrine, the plaintiff alleged negligence against a company doctor for treatment received following an employment-related accident. The *McCormick* court held that treatment was based upon the employer-employee relationship and, therefore, the doctrine was inapplicable.

In *Mufich v. Heisler Green Chemical Co.*, 121 Ill. App. 3d 958 (1984), the court applied the doctrine to a circumstance in which a hospital engineer injured his foot in a work accident and went to the hospital's emergency room for treatment. Plaintiff's complaint alleged, *inter alia*, that he had been negligently treated by emergency room personnel. The *Mufich* court held that the hospital was simply fulfilling its statutory duty of providing medical care in the case of an industrial accident. See 820 ILCS 305/8(a) (West 1992). In denying plaintiff relief, the *Mufich* court termed it a "fortuitous circumstance" the defendant was a hospital. 121 Ill. App. 3d at 963.

The court in *Dalton v. Community General Hospital* reasoned that *Mufich* should be "narrowly construed and strictly limited to its facts." *Dalton*, 275 Ill. App. 3d at 76. In *Dalton*, plaintiff was a respiratory care technician employed by the defendant hospital. Plaintiff underwent carpal tunnel surgery in the defendant hospital because her treating physician chose to perform the procedure there. The *Dalton* court determined that the defendant had been plaintiff's employer at the time she had developed carpal tunnel syndrome and that it had become a treating medical provider when the surgical procedures occurred. As a medical provider, defendant "owed the same duty to plaintiff that it owed to every other patient: to exercise a degree of reasonable care as the patient's known condition required." 275 Ill. App. 3d at 76. Accordingly, the *Dalton* court held that plaintiff's medical malpractice claims were not barred by the Workers' Compensation Act's exclusive remedy provisions.

■ While there are some factual differences between the appeal at bar and *Dalton,* we find its more expansive interpretation of the doctrine to be instructive. The alleged violations of the Confidentiality Act which occurred a number of days after Scott was treated for injuries related to his being struck in the arm by an intravenous catheter. We note that, at this time, the primary treatment provided to Scott was a prophylactic course of the drug AZT, which was administered to diminish the possibility of infection by the AIDS virus. At the time of the alleged violations, Mercy Center's role had changed from that of an employer providing statutorily required medical treatment to that of a medical provider which owed Scott the same duty that it owed to all other patients similarly situated, namely, confidentiality regarding his AIDS test. Accordingly, under

these circumstances, we find that Scott's claims for violations of the Confidentiality Act were not barred by the Workers' Compensation Act's exclusive remedy provisions.

We affirm the circuit court's dismissal of counts I through V of the amended complaint. We reverse the dismissal of count VI of the amended complaint and remand this cause of action for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded in part.

DOYLE and COLWELL, JJ., concur.