482 S.E.2d 774

Terry PROVEAUX, Appellant,

v.

MEDICAL UNIVERSITY OF SOUTH CAROLINA, Donald R. Johnson, III, M.S., Phanor Perot, M.D., and Acromed Corporation, of whom Phanor Perot, M.D. is, Respondent.

Joseph H. PROVEAUX, Appellant,

v.

MEDICAL UNIVERSITY OF SOUTH CAROLINA, Donald R. Johnson, III, M.D., Phanor Perot, M.D., and Acromed Corporation, of whom Phanor Perot, M.D. is, Respondent.

No. 24589.

Supreme Court of South Carolina.

Heard Nov. 20, 1996.

Decided March 10, 1997.

Eric S. Bland, of Connell & Bland, Columbia; and Lawrence E. Richter and W. Tracy Brown, both of The Richter Law Firm, P.A., Mt. Pleasant, for Appellants.

Thomas Dewey Wise and Robert B. Ransom, both of Wise, Pratt–Thomas, Pearce, Epting & Walker, P.A., Charleston, for Respondent.

Charles E. Carpenter, Jr., and Deborah Harrison Sheffield, both of Richardson, Plowden, Carpenter & Robinson, P.A., Columbia, for Amicus Curiae University of South Carolina School of Medicine.

TOAL, Justice:

These companion cases involve the single issue whether respondent, a physician at the Medical University of South Carolina (MUSC), is immune from suit under the South Carolina Governmental Tort Claims Act. We hold he is and affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Terry Proveaux injured her back when she fell twenty feet from a deer stand while hunting. She had emergency surgery on November 2, 1992, at MUSC. The surgery involved lumbar decompression and fusion using screws that were later found to be defective. In October 1994, the Proveauxes commenced these actions for medical malpractice and loss of consortium against MUSC, Acromed Corporation (which manufactured the defective screws), and the treating physicians including respondent Dr. Perot. Dr. Perot's role in the surgery was to perform a laminectomy, a procedure opening the spinal column and cleaning out bone chips.

Dr. Perot moved for summary judgment in both cases claiming under the South Carolina Governmental Tort Claims Act, S.C.Code Ann. § 15–78–70 (Supp.1995), he is entitled to immunity as an employee of a governmental entity, MUSC. The trial judge granted summary judgment in both cases. The Proveauxes appeal.

## LAW/ANALYSIS

Subsections (a) and (b) of § 15–78–70 of the South Carolina Governmental Tort Claims Act provide general immunity for an employee of a government entity who commits a tort while acting within the scope of his official duty. Subsection (c) further provides:

(c) Prior to January 1, 1989, a person when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually.... In the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant. The provisions of this section may in no way limit or modify the liability of a licensed physician or dentist, acting within the scope of his profession.

On or after January 1, 1989,[1].... The provisions of this section in no way shall limit or modify the liability of a licensed physician or dentist, acting within the scope of his profession, with respect to any action or claim brought hereunder which involved services for which the physician or dentist was paid, should have been paid, or expected to be paid at the time of the rendering the services from any source other than the salary appropriated by the governmental entity *or fees received from any practice plan authorized by the employer whether or not the practice plan is incorporated and registered with the Secretary of State.*

The italicized language was added by amendment effective May 10, 1994.

Dr. Perot participates in a "practice plan" as described in the May 1994 amendment. The trial judge held the amendment simply clarified the intent of the General Assembly to include doctors participating in a practice plan under the original provision of immunity that became effective for causes of action accruing on or after January 1, 1989. Since the alleged malpractice occurred in November 1992, he concluded

---

1. We have held this language refers to all causes of action accruing on or after January 1, 1989. *Browning v. Hartvigsen,* 307 S.C. 122, 414 S.E.2d 115 (1992).

Dr. Perot was entitled to immunity under this section. The Proveauxes contend the pre-amendment version does not cover Dr. Perot.

■ The facts relevant to this issue are undisputed. Dr. Perot is chairman of the Department of Neurosurgery at MUSC. He receives his annual income from two sources: MUSC and University Medical Associates (UMA). UMA is a non-profit corporation formed as a billing and collecting agent for the clinical practice of medicine at MUSC. Patients are billed by UMA for all services rendered by MUSC faculty. All of MUSC's patient-related revenue is billed and collected by UMA.

UMA allocates some of the revenue to the Neurosurgery Department to be used for administrative and other expenses, including faculty compensation. Dr. Perot receives separate paychecks from MUSC and UMA. In 1992, Dr. Perot received $92,730.22 from MUSC and $279,308.00 from UMA.

■ In determining physician immunity under the pre-amendment version of § 15–78–70(c), the operative language is whether the claim "involved services for which the physician ... was paid, should have been paid, or expected to be paid at the time of the rendering of the services from any source *other than the salary appropriated by the governmental entity.*" The words of a statute must be given their plain and ordinary meaning. *Forest Beach Villas Horizontal Prop. v. Smith,* 314 S.C. 134, 442 S.E.2d 173 (1994). Aside from a legislative function, the plain and ordinary meaning of "appropriate" is "to set apart" or "authorize." [2] Thus, a plain reading of subsection (c) indicates a physician is immune from liability if he was not paid for the services in question from any source other than the salary authorized or set apart by the governmental entity.

Here, the governmental entity is MUSC. *See* S.C.Code Ann. § 15–78–30(a), (d), and (h) (Supp.1995). Over two years before this cause of action arose, the General Assembly added

---

2. Random House Dictionary of the English Language, Second Edition Unabridged (1987).

a new section [3] to the chapter of the code regulating Colleges and Institutions of Higher Learning which provides as follows:

**§ 59–101–195. Maximum compensation of medical school physicians and employees.**

The maximum compensation of any physician or other employee of a medical school of the State of South Carolina shall be approved in advance annually by the President or the Board of Trustees of that medical school. All compensation must be approved by someone other than the recipient thereof. Compensation shall include all remuneration obtained, through a professional service organization or otherwise, with use of state owned facilities, equipment or supplies.

Under this provision of law, it is clear that 1) the President or the Board of Trustees of MUSC must approve the maximum compensation of any physician at MUSC and 2) such compensation includes all remuneration obtained with use of state owned facilities, equipment or supplies. Thus, since at least 1990, MUSC has been required to authorize a physician's total salary, including that received from the practice plan through UMA.

Since Dr. Perot's salary authorized by MUSC included payment for his treatment of Terry Proveaux, he qualified for immunity under § 15–78–70(c) in 1992, at the time the Proveauxes's causes of action accrued. The fact that the General Assembly subsequently amended the statute to specifically cover a "practice plan" does not undermine this conclusion. *See Cotty v. Yartzeff,* 309 S.C. 259, 422 S.E.2d 100 (1992) (although subsequent amendments are generally presumed to change existing law, they may in some instances be interpreted as clarifying it).

### CONCLUSION

We need not address the Proveauxes' remaining arguments. The order granting summary judgment is **AFFIRMED.**

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.

---

**3.** This section became effective February 21, 1990. Act No. 323, 1990 S.C. Acts 1840. This act is codified as S.C.Code Ann. § 59–101–195 (Supp.1995).