486 S.E.2d 269

**Kathryn K. HIGGINS and Douglas M. Higgins, Appellants,**

v.

**MEDICAL UNIVERSITY OF SOUTH CAROLINA, Fred A. Crawford, Jr., M.D., Bruce W. Usher, M.D., Daniel Alfono, M.D., Brian M. Gordon, M.D., and Peter Rosenthal, M.D., Respondents.**

No. 2662.

Court of Appeals of South Carolina.

Submitted April 8, 1997.

Decided May 12, 1997.

594

Teresa Zachry Hill, Charleston, for appellants.

Barbara Showers, Charleston, for respondents.

CURETON, Judge:

The Higginses filed this action for medical malpractice. They appeal the trial court's grant of summary judgment to all of the defendant doctors. We affirm as modified.[1]

## I. FACTS

On May 26, 1994, Mrs. Higgins filed a medical malpractice action against the Medical University of South Carolina ("MUSC"), and Drs. Crawford, Usher, Alfono, Gordon, and Rosenthal (the "doctors"). Mr. Higgins pled a loss of consortium cause of action in the same complaint. On June 24, 1994, the defendants answered, generally denying the allegations and raising a number of affirmative defenses. The doctors filed with their answer a motion to dismiss and a motion to

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rules 215 and 220(b)(2), SCACR.

strike the plea for punitive damages. On June 26, 1995, the doctors served the Higginses' attorney with affidavits from Drs. Gordon and Alfono, who asserted their sole source of compensation was from MUSC.

On September 14, 1995, the trial court heard the motions. At the hearing, the doctors argued that their motions to dismiss should be converted into motions for summary judgment. The doctors contended that physicians in the employment of state government were immune from suit under the South Carolina Tort Claims Act. They further argued that even though they provided services to Mrs. Higgins through a corporate entity known as University Medical Services ("UMA"), during their tenure with MUSC they were required to be members of a Clinical Practice Plan. The Clinical Practice Plan is the system by which faculty members provide patient care to the community while simultaneously providing clinical instruction to medical students and residents. UMA is an operation of MUSC's Clinical Practice Plan. The doctors also noted that their only source of compensation was MUSC. In support of these arguments, the doctors furnished the trial judge with copies of three circuit court orders which had ruled on similar motions.

The Higginses, on the other hand, argued strenuously against conversion of the motions to motions for summary judgment. They further argued that their allegations were sufficient to withstand a motion to dismiss, and contended further discovery was necessary to fully develop the factual issues.

After the trial judge heard the parties' arguments, he recessed for twenty-five minutes. When the judge returned to the bench, he informed the parties that he was converting the motions, and granted summary judgment to the doctors, leaving MUSC as the only defendant. The Higginses appeal, asserting (1) the trial judge should not have converted the motions, (2) the trial judge improperly relied on facts and legal conclusions in the unpublished circuit court orders, and (3) in any event, the trial judge erred in granting summary judgment.

## II. CONVERSION OF THE RULE 12(b)(6) MOTION TO A RULE 56 MOTION

The Higginses first contend the trial court erred in converting the doctors' motion from a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, to a motion for summary judgment pursuant to Rule 56, SCRCP. The Higginses argue that they had not expected the trial judge to consider materials outside the complaint when deciding the motion. Consequently, the Higginses claim they were surprised and not afforded a reasonable opportunity to present pertinent materials. We agree that notice was insufficient for conversion.

The issue here involves satisfaction of Rule 56's notice provision when a 12(b)(6) motion is converted into a motion for summary judgment. South Carolina appellate courts have addressed conversion on a few occasions. In *Brown v. Leverette*, 291 S.C. 364, 353 S.E.2d 697 (1987), the Supreme Court reversed a trial court's grant of a 12(b)(6) motion because the trial court considered supporting affidavits and ruled on "defenses ... not apparent from the face of the complaint." The first indication the non-movants had that the trial court was going to consider the submitted affidavits was the order of dismissal. *Id.* The *Leverette* court stated that "the notice provisions in Rule 56 are incorporated into Rule 12(b)(6)." *Id.* at 367, 353 S.E.2d at 699. *Leverette* does not expressly state whether the non-movant had copies of the supporting affidavits at least 10 days before the hearing as required by Rule 56.

However, in *Bowen & Smoot v. Plumlee*, 301 S.C. 262, 391 S.E.2d 558 (1990), our Supreme Court implied that less than express notice of the court's intent to convert would be sufficient. The *Plumlee* court held that the trial judge properly denied conversion of a 12(b)(6) motion to a Rule 56 motion because the supporting "affidavit was never sent to the [non-movants] nor were they advised of the [movant's] request for summary judgment." *Id.* at 266, 391 S.E.2d at 560.

In *Crosswell Enters. v. Arnold*, 309 S.C. 276, 422 S.E.2d 157 (Ct.App.1992), the court sanctioned conversion "because the motion was supported by matters outside the pleadings." The court noted that "the parties were afforded a reasonable opportunity to introduce evidentiary matters in accordance with Rule 56(c) and (e)." *Id.* at 279, 422 S.E.2d at 159.

Next, in *McDonnell v. Consolidated Sch. Dist.*, 315 S.C. 487, 445 S.E.2d 638 (1994), the court held that a party could use a summary judgment motion to raise a statute of limitations defense. In a footnote, the *McDonnell* court stated that "if on a motion under 12(b)(6) matters outside the pleadings are presented and not excluded, the motion shall be treated as one for summary judgment." *Id.* at 489 n. 2, 445 S.E.2d at 639 n. 2. The court then stated it was treating the motion as one for summary judgment because the trial judge considered matters outside the pleadings, but the *McDonnell* court did not expressly address whether proper notice had been given. *Id.*

Finally, in *Johnson v. Dailey*, 318 S.C. 318, 457 S.E.2d 613 (1995), the court explicitly sanctioned conversion even though the non-movant did not get express notice. In *Johnson*, the defendants attached outside materials to their 12(b)(6) motion. The trial court treated the 12(b)(6) motion as one for summary judgment, and our Supreme Court affirmed. *Id.* The *Dailey* court stated: "Here, unlike in *Bowen & Smoot v. Plumlee*, the outside materials, including Superintendent's letter attached to the 12(b)(6) motion, gave notice to Johnson more than thirty days prior to the hearing. Indeed, the outside materials were specifically referred to by [the movants], both in the motion and at the hearing." *Id.* at 321, 457 S.E.2d at 615.

In the present case, we believe that the trial judge improperly converted the doctors' motions. First, however, we must distinguish between Drs. Gordon and Alfono, who submitted affidavits, and the remaining doctors, who did not submit affidavits. The affidavits of Drs. Gordon and Alfono cannot be read as providing facts relevant to the other doctors. The submitted affidavits only aver that the two doctors were a resident and a fellow respectively, and that they received no money and provided no medical services outside of their employment with MUSC. At the hearing, even the doctors' attorney distinguished between the affiant doctors and the other doctors, by arguing that the affidavits showed the affiant doctors were students "for all intense and purposes [sic]." As to the other doctors, the attorney stated that there were "no allegations in the [Higginses'] Complaint that [the other doctors] receive income from any other source." Thus, as to the doctors who did not submit affidavits or other outside materi-

als, the motion should have been heard pursuant to Rule 12(b)(6), SCRCP.

■ Even though Drs. Gordon and Alfono submitted affidavits, the trial court erred by converting their motions. Unlike *Dailey*, the record reflects (1) the affidavits were not attached to the motion, but were served about a year later, and (2) the doctors' motion and memorandum in support of the motion did not refer expressly to the outside materials. Further, unlike *Prospero Assocs. v. Burroughs Corp.*, 714 F.2d 1022 (10th Cir.1983), which was cited to support the holding in *Leverette*, the Higginses did not expressly refer to or discuss the affidavits in their memorandum, which would have waived their objection to lack of notice. In fact, the Higginses' attorney argued strenuously that she had only been noticed with a motion to dismiss and motion to strike, and she responded at the hearing accordingly. The trial judge did not tell the parties he was converting the motion until he gave his oral decision after the court had recessed following argument. Under these facts and circumstances, we do not believe that the Higginses were "fairly apprised that the court would look beyond the pleadings." *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984). Thus, the trial court erred by granting summary judgment.

■ We briefly note that the practical effect of the *Dailey* conversion rule is to require non-movants to be vigilant and adequately prepare whenever a movant submits a 12(b)(6) motion coupled with affidavits. We hope that movants will not, as a strategic device, submit 12(b)(6) motions with affidavits, anticipating that the non-movant will appear at the hearing without having served supporting affidavits. *Cf. In re Bristol Indus. Corp.*, 690 F.2d 26 (2d Cir.1982) (expressing the concern that the potential for conversion might put an undue burden on those moving for a preliminary injunction). It is a fundamental rule that "if the plaintiff relies solely upon the pleadings, files no counter-affidavits, and makes no factual showing in opposition to a motion for summary judgment, the [trial] court is required under Rule 56, to grant summary judgment, if, under the facts presented by the defendant, he was entitled to judgment as a matter of law." *Humana Hospital–Bayside v. Lightle*, 305 S.C. 214, 216, 407 S.E.2d 637,

638 (1991). We cannot hold in good conscience that the Higginses were adequately noticed, and then proceed to apply the foregoing rule against them.

## III. RELIANCE ON CIRCUIT COURT ORDERS

The Higginses next contend that the judge improperly relied on three circuit court orders which either dismissed or granted summary judgment to MUSC doctors in actions similar to this one. They argue that since the trial judge included within the appealed order facts and evidence from these orders, the trial judge improperly considered evidence not in the record when he granted summary judgment to the doctors. Although we have held it error to convert the motions in this case, we nevertheless take the opportunity to address this issue. We agree, regardless of how the motions are characterized, that the trial judge's reliance on facts and legal conclusions within the orders was improper, but we hold the issue was not preserved for appeal.

When ruling on a motion for summary judgment, the trial judge must consider *all* of the documents and evidence *within the record*, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Anthony v. Padmar, Inc.*, 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992); *Gilmore v. Ivey*, 290 S.C. 53, 348 S.E.2d 180 (Ct.App.1986). However, factual statements of the attorneys, whether made during argument or in written briefs or memoranda, ordinarily may not be considered by the court in determining whether a genuine issue of material fact exists. *Gilmore*, 290 S.C. 53, 348 S.E.2d 180. Moreover, reliance on an unpublished order is improper. *Plante v. State*, 315 S.C. 562, 446 S.E.2d 437 (1994) (partly discounting a litigant's argument by citing Rule 239(d)(2), SCACR, and holding that the party on appeal could not rely on an unpublished order).

In the present case, the defense sent one of the circuit court orders to the judge before the hearing. At the hearing, the doctors handed the judge another copy of that order as well as the orders of two other circuit judges. Two of the circuit judges granted summary judgment to MUSC doctors in similar actions, and one of the judges granted a 12(b)(2) motion to substitute MUSC as the proper defendant instead of

the doctors. Based on these orders, the doctors argued at the hearing that they did not receive money from any sources other than MUSC, that any money received by UMA "goes back to" MUSC, and that the "whole point [of the UMA] is to get competent physicians, and be able to compensate them well, and provide that cost effective liability insurance in this community for those physicians [sic]." In the order at issue in this case, the trial judge made a number of findings which were consistent with the doctors' arguments. Further, the present order cited one of the other orders as authority for a proposition of law. Except for factual findings relevant to the two affiant doctors' attestation that they only performed duties for and received compensation from MUSC, the rest of the trial court's factual findings only could have been based on the circuit court orders and the statements of defense counsel at the hearing.

We hold that neither the doctors nor the trial court could rely on facts and legal conclusions within the circuit court orders.[2] Thus, the doctors' assertions at the hearing, which were based on facts within the orders, constituted factual statements of counsel. Moreover, the orders were, in effect, memoranda submitted by counsel. In any event, the trial court could not properly consider factual statements from either when deciding the motions, however they are character-ized. *Cf. Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995) (noting that the ruling on a 12(b)(6) motion to dismiss must be based solely upon the allegations set forth on the face of the complaint); *Gilmore,* 290 S.C. 53, 348 S.E.2d 180 (holding that the judge cannot consider factual statements of counsel in a motion for summary judgment). This is not to say that circuit court orders cannot be submitted to a trial judge as one would submit a memorandum of law on a particular issue, but judges may not accept the facts found therein as proof for summary judgment, nor may they expressly rely on the order as authority for any proposition.

---

2. Of course, orders from the trial level may be submitted as evidence in appropriate cases, such as for establishing offensive collateral estoppel. *Cf. Middleborough Horiz. Property Regime Council of Co–Owners v. Montedison S.p.A.,* 320 S.C. 470, 465 S.E.2d 765 (Ct.App.1995).

■ Nevertheless, the Higginses failed to preserve the issue for appeal. At the hearing, the Higginses' counsel did not object to defense counsel's submission of the subject orders to the trial judge. Nor did the Higginses' counsel object to the trial judge's consideration of the orders, even though defense counsel argued at the hearing:

> Judge, what we have tried to give you is what the three other judges have ruled on the exact same issue. You have their Orders and you and your law clerk can see where this issue has been raised where some very competent, very good plaintiff's attorneys have tried to do exactly what [the Higginses' counsel] is trying to do [sic]. . . .

On appeal, the Higginses argue they preserved the error when their counsel stated:

> I would distinguish those cases from this one in that the motions before I believe Judge Howard and Judge Rawl, and I think it was Judge Connor, I believe were motions for summary judgment. Those judges had much more information before them from the depositions, I am sure affidavits from the President of the Medical University, affidavits from UMA, we don't have that before us today, and that would distinguish this situation from the orders they presented. We think this is an appropriate decision to be made in the future, after discovery has been completed.

In fact, this statement from the Higginses' counsel is an argument against summary judgment and conversion of the motions, and it cannot fairly be construed as either an objection to submission of the orders to the judge or an objection to consideration of facts and legal conclusions within the orders. Since the Higginses did not object, the issue is not preserved. *Cf. Beaufort Cty. v. Butler*, 316 S.C. 465, 451 S.E.2d 386 (1994) (issues not raised at merits hearing are not preserved for appellate review); *Millan v. Southern Ry. Co.*, 54 S.C. 485, 32 S.E. 539 (1899) (party cannot complain for the first time on appeal that the trial court relied on the verbal statement of facts by counsel in support of a motion to amend); *Smith v. Strickland*, 314 S.C. 192, 442 S.E.2d 207 (Ct.App.1994) (defendants could not complain on appeal where they failed to present to the trial judge the issue that he should not have given judgment to the plaintiffs before he considered all of the plaintiffs' evidence). Moreover, the record does not reflect

that the Higginses filed a motion pursuant to Rule 59(e), SCRCP, which would have given the circuit judge a chance to clarify whether his decision would have been the same without his reliance on and citation of the circuit court orders.

## IV. SUBSTANTIVE DISPOSITION OF THE RULE 12(b)(6) MOTIONS

■ Since we hold that the conversion of the motions was improper but that the Higginses failed to preserve the issue of whether the trial court improperly relied on facts and legal conclusions in other orders, we still address the substantive disposition of the motions. An error in conversion is harmless "if the dismissal can be justified under Rule 12(b)(6) without reference to matters outside of the plaintiff's complaint." *Brown v. Zavaras,* 63 F.3d 967, 970 (10th Cir.1995). *See also Travel All Over the World, Inc. v. Saudi Arabia,* 73 F.3d 1423, 1430 (7th Cir.1996). We hold that dismissal of the doctors was justified under 12(b)(6).

The Higginses sued the doctors alleging negligence in the performance of medical services while the doctors were in the employ of MUSC. Pursuant to S.C.Code Ann. § 15–78–70 (Supp.1996), an employee of a governmental entity is not liable for a tort as long as the tort was committed within the scope of official duty or was not committed "with actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." The definition of "governmental entity" includes the state and its political subdivisions, and the definition of "political subdivision" includes a "governmental health care facility." S.C.Code Ann. § 15–78–30(d), (h) (Supp.1996). A plaintiff who brings an action pursuant to these provisions "shall name as a party defendant only the agency or political subdivision for which the employee was acting," and, "[i]n the event that the employee is individually named, the agency or political subdivision ... must be substituted as the party defendant." S.C.Code Ann. § 15–78–70(c) (Supp.1996).

However, the immunity of governmental physicians is limited. Section 15–78–70(c) provides:

The provisions of this section in no way shall limit or modify the liability of a licensed physician ..., acting within the scope of his profession, with respect to any action or claim brought hereunder which involved services for which the

physician ... was paid, should have been paid, or expected to be paid at the time of the rendering of the services from any source other than the salary appropriated by the governmental entity *or fees received from any practice plan authorized by the employer whether or not the practice plan is incorporated and registered with the Secretary of State.* (Emphasis added).

The emphasized portion of the above quote is an amendment which became effective on May 10, 1994, but it clearly mandates that immunity will continue for a doctor who performs medical services for the Clinical Practice Plan and UMA. Moreover, the South Carolina Supreme Court recently held that a MUSC doctor who performed services through UMA qualified for the immunity in § 15–78–70(c) even pursuant to the statutory language prior to the 1994 amendment. *Proveaux v. Medical Univ. of South Carolina,* 326 S.C. 28, 482 S.E.2d 774 (1997).

In deciding a motion to dismiss pursuant to 12(b)(6), the trial court should only consider the allegations set forth on the face of the plaintiff's complaint, and a 12(b)(6) motion should not be granted if "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 602–03 (1995). The Higginses note, in briefs filed before issuance of *Proveaux,* that their action accrued in January and February of 1992, and they contend that they allege a cognizable cause of action because the immunity is questionable for a doctor who performed services for UMA prior to the effective date of the amendment. Obviously, *Proveaux* disposes of this contention.

■ However, dismissal was appropriate even without reference to *Proveaux.* The Higginses alleged in their complaint that (1) the doctors were acting within the scope of their employment at the time of the alleged negligent acts, (2) MUSC and Dr. Crawford agreed to render medical care for valuable consideration, and (3) MUSC and the doctors "professed to be capable of furnishing the necessary care ... in accordance with the standards then prevailing in the community and *to make the usual and customary charges for the care, services and treatments rendered."* (Emphasis added). In

their answer, the doctors admitted they were acting within the scope of their employment with MUSC, and that Mrs. Higgins had been admitted to MUSC under the care of Dr. Crawford. The Higginses argue that a reasonable inference from the emphasized allegation above is that the doctors were to be paid by a source other than MUSC. We disagree. While the allegation does state that the doctors and MUSC were going to charge for their services, this allegation in no way addresses the source from which the doctors ultimately were to be compensated. Moreover, the Higginses alleged that the doctors were at all times acting within their scope of employment with MUSC. Thus, the Higginses' complaint cannot be construed as asserting the doctors were acting outside of the immunity provisions by being paid from a nongovernmental source. The doctors were properly dismissed. Of course, the doctors ultimately would still escape the action pursuant to the ruling in *Proveaux.*

In many instances, plaintiffs dismissed pursuant to 12(b)(6) are granted leave to amend. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Dockside Ass'n v. Detyens, Simmons & Carlisle,* 297 S.C. 91, 374 S.E.2d 907 (Ct.App.1988) (citing *Foman* and stating that where a complaint is dismissed under 12(b)(6), plaintiff should be granted leave to file an amended complaint). In *Foman,* the United States Supreme Court stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the [trial court], but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the [rules].

Here, however, any amendment of the Higginses' complaint which alleges the doctors were paid by UMA ultimately would be futile, in view of *Proveaux. See also Abell v. Bell,* 229 S.C. 1, 91 S.E.2d 548 (1956) (noting that "subsequent legislation

may be of service as indicating the construction given to the former by the legislature itself"). Thus, the dismissal of the doctors is final.

## V. CONCLUSION

We hold that the trial court erred by converting the doctors' 12(b)(6) motion into a motion for summary judgment. We further hold that the Higginses failed to preserve for appeal the issue of the trial court's consideration of facts not within the record and reliance on circuit court orders. Finally, we hold that the conversion error was harmless inasmuch as dismissal was justified pursuant to Rule 12(b)(6), SCRCP, without reference to matters extrinsic to the pleadings.

Accordingly, the order of the trial court is

**AFFIRMED AS MODIFIED.**

HEARN and ANDERSON, JJ., concur.