517 S.E.2d 706

Jennifer M. TATUM and Billy Joe Scarborough, Appellants,

v.

MEDICAL UNIVERSITY OF SOUTH CAROLINA, Respondent.

No. 2986.

Court of Appeals of South Carolina.

Heard March 9, 1999.

Decided May 3, 1999.

Rehearing Denied June 26, 1999.

Certiorari Granted Nov. 5, 1999.

---

Donald E. Jonas, of Cotty & Jonas, of Columbia, for appellants.

Robert H. Hood, Barbara W. Showers, P. Gunnar Nistad and Joseph C. Wilson, IV, all of Hood Law Firm, of Charleston, for respondent.

HEARN, Justice:

In this medical malpractice action, Jennifer M. Tatum appeals a circuit court order granting the Medical University of South Carolina's (MUSC) motion to dismiss pursuant to Rule 12(b)(6), SCRCP. Tatum contends the circuit court erred in finding workers' compensation benefits were Tatum's exclu-

sive remedy, thus barring her medical malpractice claims against MUSC. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On November 3, 1993, Tatum injured her back while transporting a pig in the course of her employment as an animal care technician with MUSC. MUSC is operated and funded as a public institution of the State of South Carolina and is a governmental entity as defined in the South Carolina Tort Claims Act.

Tatum's complaint sets forth the following facts. At the direction of MUSC, Dr. Nicholson, an assistant professor with MUSC's Back Pain Clinic, diagnosed Tatum with a "midline broadly based disc herniation." On March 25, 1994, after repeated cervical epidural injections, MUSC referred Tatum to Dr. Patel for surgical consultation. MUSC employed Dr. Patel as an assistant professor and neurological surgeon. On April 6, 1994, Dr. Patel surgically fused two of Tatum's vertebrae. On April 29, 1994, Dr. Patel repeated the surgery because the original bone graft site collapsed.

During the second surgery, Dr. Patel inserted a synthes plate by drilling and placing screws in Tatum's vertebrae. Dr. Patel failed to inform Tatum that he planned on inserting the plate and failed to discuss the potential risks prior to surgery. During the procedure, Dr. Patel, or someone under his supervision, drilled through the vertebrae, damaging Tatum's cervical spinal cord and the nerves affecting Tatum's arms and upper extremity. Tatum alleges a reasonable patient would not have consented to the drilling if the risks had been fairly and adequately explained.

On June 13, 1994, after Tatum reported experiencing difficulty swallowing, Dr. Patel performed an additional surgery to remove a dislodged synthes plate because a screw became loosened and protruded into Tatum's esophagus. MUSC provided Tatum with the above services through University Medical Associates (UMA), a part of MUSC's Clinical Practice Plan.

MUSC advised Tatum her symptoms and complaints resulted from various causes other than the above surgical procedures. On January 26, 1995, Tatum first learned Dr. Patel's

surgery caused permanent damage to her spinal cord. Tatum has pursued her workers' compensation remedy and has received a final award.

Tatum filed this suit against MUSC alleging Dr. Patel negligently punctured her spinal canal, which caused injury to her cervical spinal cord, and negligently failed to inform her of the risks associated with the procedures employed. Tatum further alleges she did not learn of the puncture until seeking treatment from a secondary source because MUSC failed to notify her of the surgical complications. Tatum's complaint included a loss of consortium claim brought by her husband.

MUSC filed an amended answer arguing the Workers' Compensation Act provided the exclusive remedy because Tatum's injuries arose out of and in the course of her employment. MUSC moved to dismiss pursuant to Rule 12(b)(6), SCRCP, arguing that public entities and their employees cannot exempt themselves from the workers' compensation provisions. MUSC further asserted that under South Carolina Code section 42–15–70 (1976), an employer is not liable for a physician's malpractice, and any malpractice injury is merged into the workers' compensation award. The circuit court granted MUSC's motion to dismiss, finding workers' compensation was Tatum's exclusive remedy.

## STANDARD OF REVIEW

A motion to dismiss must be based solely upon the allegations set forth in the complaint. Rule 12(b)(6), SCRCP; *Jarrell v. Petoseed Co., Inc.*, 331 S.C. 207, 209, 500 S.E.2d 793, 794 (Ct.App.1998). "Viewing the evidence in favor of the plaintiff, the motion must be granted if facts alleged in the complaint and inferences reasonably deducible therefrom do not entitle the plaintiff to relief on any theory of the case." *Jarrell*, 331 S.C. at 209, 500 S.E.2d at 794. "The question to be considered is whether in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Holy Loch Distrib., Inc. v. Hitchcock*, 332 S.C. 247, 252, 503 S.E.2d 787, 790 (Ct.App.1998).

## LAW/ANALYSIS

MUSC contends South Carolina Code section 42–1–540 (1976), mandates workers' compensation benefits as Tatum's exclusive remedy. Tatum urges this court to adopt a "dual capacity" analysis whereby her employer could also be liable in malpractice as her physician.

Tatum's initial injury is unquestionably subject to the provisions of the South Carolina Workers' Compensation Act, S.C.Code § 42–1–10 *et seq.* (1976 & Supp.1998). "The State, its municipal corporations and political subdivisions thereof, and the employees of the State or its municipal corporations or political subdivisions are subject to this title." S.C.Code Ann. § 42–1–320 (Supp.1998).[1] MUSC is a governmental entity funded and operated as a public institution of the State of South Carolina, and Tatum was an employee of MUSC at the time of her injury.

South Carolina's workers' compensation laws were enacted to provide a comprehensive approach for compensating employees injured on the job. "The employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee. This *quid pro quo* approach to [workers'] compensation has worked to the advantage of society as well as the employee and employer." *Parker v. Williams & Madjanik,* 275 S.C. 65, 70, 267 S.E.2d 524, 526 (1980).

To ensure the exclusivity of the remedy provided to the employee, the Workers' Compensation Act provides in pertinent part:

The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, *shall exclude all other rights and remedies of such*

---

1. The quoted language was in effect at the time Tatum filed her complaint. When Tatum suffered her injury, the pre-amended version was in effect, which provided: "Neither the State nor any municipal corporation, nor any political subdivision thereof, nor any employee of the State or of any such corporation or subdivision may reject the provisions of this Title relative to payment and acceptance of compensation...." S.C.Code Ann. § 42–1–320 (1985) (later amended by 1996 Act No. 424 § 4, effective June 18, 1996).

*employee,* his personal representative, parents, dependents or next of kin *as against his employer, at common law or otherwise,* on account of such injury, loss of service or death. S.C.Code Ann. § 42–1–540 (1985) (emphasis added); *see Carter v. Florentine Corp., Inc.,* 310 S.C. 228, 230, 423 S.E.2d 112, 113 (1992) ("Where an employer is covered by Workers' Compensation, the Act is the exclusive remedy of an employee injured in the course and scope of employment."), *overruled on other grounds by Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994); *Meyer v. Piggly Wiggly No. 24, Inc.,* 331 S.C. 261, 264, 500 S.E.2d 190, 191–92 (Ct.App.1998) (noting the circuit court lacks jurisdiction to entertain a suit against the employer when workers' compensation is the employee's exclusive remedy). The Workers' Compensation Act further provides:

> [T]he employer shall not be liable in damages for malpractice by a physician or surgeon furnished by him pursuant to the provisions of this section, but the consequences of any such malpractice shall be deemed part of the injury resulting from the accident and shall be compensated for as such.

S.C.Code Ann. § 42–15–70 (1985).

These statutes together form the basis for MUSC's contention that it cannot be held liable in tort for Dr. Patel's alleged malpractice. MUSC argues that any second injury attributable to Dr. Patel merely collapses into the workers' compensation award.

Tatum, on the other hand, argues that these statutes address the "free choice of doctor" controversy and should not be read to prevent malpractice actions against all treating physicians. *See* Arthur Larson & Lex K. Larson, 5 *Larson's Workers' Compensation Law* § 61.12(b) & (c) (1998). In South Carolina, unlike some other states, the employer directs the employee to a particular treating physician for a work-related injury. S.C.Code Ann. § 42–15–60 (1976); 25A S.C.Code Ann.Reg. 67–509(A) (1990). The employee cannot choose her own treating physician without risking being barred from further compensation. S.C.Code Ann. § 42–15–60.

■ We agree that Code section 42–15–70 does not bar a medical malpractice suit against a negligent treating physi-

cian. *See* S.C.Code Ann. § 42–1–560 (1976) (authorizing suits for damages against third parties). The purpose of the statute was simply to insulate the employer from liability for a treating physician's negligence merely because the employer exercised control in choosing the physician. We can discern no broader purpose to the initial clause of section 42–15–70 exculpating an employer from liability for malpractice. This interpretation accords with the basic workers' compensation policy of insulating an employer from tort liability arising directly as a result of an industrial accident. *See Parker*, 275 S.C. at 70, 267 S.E.2d at 526.

We likewise agree that section 42–15–70's second clause, which MUSC alleges merges a malpractice claim into a workers' compensation award, should not be construed to bar a separate claim for damages. That clause has been interpreted to include as a compensable injury "[e]very natural consequence which flowed from this [work-related] injury, unless the result of an independent intervening cause, sufficient to break the chain of causation." *Whitfield v. Daniel Constr. Co.*, 226 S.C. 37, 41, 83 S.E.2d 460, 462 (1954); *see also Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 458 S.E.2d 76 (Ct.App.1995).

In *Whitfield*, an employee suffered a scalp injury at work and was given a prescription barbiturate instead of a narcotic for pain because the company doctor had lost the privilege of prescribing narcotics. The employee died after driving into a guard rail on his way home from work that day. The supreme court remanded the case to determine whether the barbiturate caused the employee to lose control of his truck and if so, ordered that the death was compensable under workers' compensation law.

Essentially, any malpractice committed during the treatment of a compensable work-related injury that exacerbates the injury will also be compensable by the employer. Tatum has already received a final award under workers' compensation that, we assume, takes into account the enhanced injuries to her spinal column and upper extremity, which Tatum attributes to Dr. Patel's negligence. Neither party argues holding MUSC liable as the employer in this way is error.

■ There is no doubt that, in addition to her workers' compensation award, Tatum would be entitled to pursue a medical malpractice action against Dr. Patel individually if he were engaged in the private practice of medicine. *See* S.C.Code Ann. § 42–1–560. However, South Carolina's Tort Claims Act (SCTCA) bars such an action in the present case. S.C.Code Ann. § 15–78–10 *et seq.* (1986 & Supp.1998).

■ The SCTCA provides "the exclusive remedy for any tort committed by an employee of a governmental entity." S.C.Code Ann. § 15–78–70(a) (Supp.1998). Section 15–78–70(c) grants a physician-employee of a governmental entity immunity for tort claims "as long as the tort was committed within the scope of official duty or was not committed 'with actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.'" *Higgins v. Medical Univ. of S.C.,* 326 S.C. 592, 602, 486 S.E.2d 269, 274 (Ct.App.1997) (quoting S.C.Code Ann. § 15–78–70(b)). Negligence alone is insufficient to impose liability on the governmental employee individually. Both this court and our supreme court previously held that a doctor who performs medical services for MUSC through UMA qualifies for section 15–78–70(c) immunity. *Proveaux v. Medical Univ. of S.C.,* 326 S.C. 28, 32, 482 S.E.2d 774, 776 (1997);[2] *Higgins,* 326 S.C. at 603, 486 S.E.2d at 274–75.

Thus, instead of suing Dr. Patel individually, Tatum must name MUSC as the party defendant under the terms of Code section 15–78–70(c). However, this SCTCA directive directly conflicts with the workers' compensation exclusivity provision. Tatum is thus a victim of the circuitous statutory logic which, at least in theory, was enacted to benefit her. Although Tatum cannot sue MUSC for directing her to see Dr. Patel because of the workers' compensation exclusivity provision, she should be able to sue Dr. Patel individually as a third-party tortfeasor. Because Dr. Patel is employed by MUSC, however, she must sue MUSC as Dr. Patel's employer, something she cannot do because of the exclusivity provision.

2. The *Proveaux* case actually discussed section 15–78–70(c) before our legislature added language specifically covering "practice plans," thus bolstering our conclusion Dr. Patel qualifies for individual immunity.

Tatum argues that this circuitous result cannot have been intended by the General Assembly. She urges this court to adopt a theory of liability known as the "dual capacity" doctrine, which allows an employee to commence a traditional tort action against an employer despite the Workers' Compensation Act, if the employer "occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as an employer." *Parker v. Williams & Madjanik*, 275 S.C. 65, 75, 267 S.E.2d 524, 529 (1980) (quoting Larson, 2A *Larson's Workmen's Compensation Law* § 72:80 (1976)).

Some jurisdictions apply the dual capacity doctrine in situations like Tatum's where a hospital's or doctor's employee suffers a second or aggravated injury caused by the employer-hospital's or employer-doctor's negligence.[3] *Wright v. Louisiana*, 639 So.2d 258 (La.1994) (medical malpractice tort claim allowed against employer-hospital); *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978) (same); *Sturtevant v. County of Monterey*, 228 Cal.App.3d 758, 279 Cal.Rptr. 161 (1991) (same); *see also Russell v. Orr*, 700 So.2d 619 (Miss.1997) (remanding for further factual development on employment relationship between negligent treating physicians and employer-hospital to determine viability of vicarious liability tort claim by employee against employer-hospital); *Goins v. Mercy Ctr. for Health Care Servs.*, 281 Ill.App.3d 480, 217 Ill.Dec. 563, 667 N.E.2d 652 (1996) (tort claim for breach of Confidentiality Act allowed against employer-hospital); *Firestein v. Kingsbrook Jewish Med. Ctr.*, 137 A.D.2d 34, 528 N.Y.S.2d 85 (1988) (tort claim for negligence allowed against employer-hospital). The rationale compelling application of the dual capacity doctrine in these situations is "that the

---

3. In addition to circumventing the employer's liability shield, some jurisdictions employ the dual capacity doctrine to hold company doctors or other health care professionals liable as co-employees despite a Workers' Compensation Act provision barring suits against co-employees. William J. Appel, Annotation, *"Dual Capacity Doctrine" as Basis for Employee's Recovery for Medical Malpractice from Company Medical Personnel*, 73 A.L.R.4th 115 (1989 & Supp.1998). This aspect of the dual capacity doctrine is inapplicable to the present case because Dr. Patel was not hired as a company doctor to care exclusively for MUSC employees. Even if he were, the South Carolina Tort Claims Act would bar Tatum's suit against Dr. Patel individually. S.C.Code Ann. § 15–78–70(c) (Supp.1998).

medical relationship between the employer and employee is separate from the employment relationship." Michael A. DiSabatino, Annotation, Modern Status: "Dual Capacity Doctrine" as Basis for Employee's Recovery from Employer in Tort, 23 A.L.R.4th 1151, 1156 (1983 & Supp.1998).

Application of the dual capacity doctrine has been criticized in some cases, however, for "ignoring [the doctrine's] central requirement of a second and distinct legal persona, not merely a second theory of liability in the same person." 6 Larson's § 72 .61(c), at 14–290.60 (criticizing D'Angona v. County of Los Angeles, 27 Cal.3d 661, 166 Cal.Rptr. 177, 613 P.2d 238 (1980), which held a hospital liable for negligently employing the treating doctor rather than holding hospital vicariously liable for treating doctor's malpractice).[4]

To combat overextending the dual capacity doctrine, Larson proposes changing the phraseology to "dual persona " doctrine to highlight the requirement of a separate legal persona rather than merely a separate theory of liability. Id. at § 72.81(a), at 14–290.88–9. Thus, the dual persona doctrine would only apply "if the employer had a second capacity that created obligations to the employee independent of its obligations as employer ... [where] the second capacity must be so completely independent as to create a separate legal person." Id. at § 72.81(c), at 14–290.110–11.[5]

---

**4.** The result Larson criticizes in the D'Angona case has been abrogated by statute in California. Cal.Lab.Code § 3602 (West 1982) (amended in 1982 to provide: "[T]he fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee ... to bring an action at law for damages against the employer."). However, the dual persona doctrine continues to be viable in California in cases like Tatum's. See Sturtevant v. County of Monterey, 228 Cal.App.3d 758, 279 Cal.Rptr. 161 (1991) (holding statutory amendment to section 3602 did not bar suit by employee against hospital-employer because employer did not assume dual capacity as health care provider until after the injury had occurred).

**5.** The new phraseology stems from a recognition that typical third-party statutes, like our section 42–1–560, define third parties as "a person other than the employer," which is quite different from "a person acting in a capacity other than that of employer." 6 Larson's § 72.81(a), at 14–290.91. Thus, Larson advocates invoking the doctrine where the employer acts as the employee's physician, see Id. at § 72.61(b) n. 65.1 (citing Duprey v. Shane, 241 P.2d 78 (Cal.Ct.App.

While a dual capacity doctrine does exist in South Carolina, its current incarnation clearly does not address the situation presented here. *Willis v. Aiken County*, 203 S.C. 96, 104–5, 26 S.E.2d 313, 316 (1943) (approving a dual capacity doctrine that permits executive officers to recover under workers' compensation if the officer engaged in "manual labor or the ordinary duties of a workman," and holding a deputy sheriff was not only an administrator but also routinely performed manual labor when discovering and destroying illegal liquor operations; thus, deputy sheriff's injury during such a raid was compensable).

More recently, our supreme court has expressly declined to expand the dual capacity doctrine on the facts presented before it. *Johnson v. Rental Uniform Serv. of Greenville*, 316 S.C. 70, 447 S.E.2d 184, 184–5 (1994); *Parker v. Williams & Madjanik*, 275 S.C. 65, 75, 267 S.E.2d 524, 529 (1980). However, an in-depth examination of the doctrine and the cases in South Carolina convinces us that the situation presented here is distinctly different from the other situations in which the doctrine has been explicitly rejected. Utilizing Larson's distinction between the dual capacity doctrine and dual persona doctrine, we do not read the decisions of our supreme court in *Parker* and *Johnson* as barring a dual persona claim.

In *Parker*, 275 S.C. 65, 267 S.E.2d 524, an employee hired by a sub-sub contractor sued the general contractor after suffering fatal injuries when a wall collapsed while the employee was erecting a roof. The employee sought recovery against the general contractor under the dual capacity doctrine, alleging the general contractor engaged in architectural and engineering activities in addition to general contracting duties. *Id.* at 75, 267 S.E.2d at 529. Our supreme court found the general contractor to be the statutory employer and held, "Assuming without deciding that there are instances where the dual-capacity doctrine could be applied, it is clear that under the facts of this case the doctrine is inapplicable." *Id.*

---

1952) (permitting a suit against employer after finding a chiropractor acted as both employer and attending physician)), but not where the employer merely negligently employs the doctors. *See, e.g., D'Angona,* 27 Cal.3d 661, 166 Cal.Rptr. 177, 613 P.2d 238 (1980) (permitting a claim against a hospital for negligently employing a doctor) (result later abrogated by statute, *see supra* n. 4).

In rejecting the employee's argument, the supreme court focused on the fact that the "employee was engaged in work which was directly related to his employment" at the time of the injury and thus found the employee's claims exactly the type of claim workers' compensation was designed to cover. *Id.* The supreme court apparently refused to find the general contractor occupied a second capacity with obligations independent from those imposed as a general contractor because the employee was engaged in the very activity at the time of the injury that he was hired to perform. Thus, the employer owed the employee no additional duties.

The supreme court's decision in *Johnson,* 316 S.C. 70, 447 S.E.2d 184, offers a similar analysis.[6] In *Johnson,* the employer owned a chemical processing plant and assumed the general contractor's role in constructing the plant after terminating the original general contractor. Once the plant was in operation, an employee suffered serious burns when a special dryer exploded and caused a flash fire. Because the employee received workers' compensation benefits, the Workers' Compensation Act barred a tort action against the employer. The employee sought to sue the employer in its capacity as a general contractor under the dual capacity doctrine. In a brief per curiam opinion, our supreme court declined to adopt the dual capacity doctrine as the law of South Carolina. *Id.*

As with *Parker,* the employee in *Johnson* was acting in the capacity for which she was employed at the time of the accident. Even if the employer undertook a second capacity, the employer did not owe the employee any duty independent from its duties as an employer. Because the employer never assumed obligations independent from those imposed as an employer, the employer never assumed a dual or second persona. Thus, neither *Parker* nor *Johnson* presented compelling facts to develop a dual persona analysis.

The present case presents a much different factual situation. Tatum was not working in the capacity for which she was hired by MUSC when she was injured by Dr. Patel's alleged malpractice. Once MUSC began to treat Tatum for her injury, the duties it owed her transmuted from those of an

---

6. The factual discussion stems from a review of the record and briefs on file with the supreme court.

employer into those of a hospital treating a patient, including a duty to ensure against malpractice. Thus, this secondary relationship "created obligations to the employee independent of its obligations as employer," and the secondary relationship was so "completely independent as to create a separate legal person." 6 *Larson's* § 72.81(c), at 14–290.110–11.

Although MUSC was required to direct Tatum to a treating physician, it was not required to direct her to be treated at its own facilities. Thus, we find that once MUSC referred Tatum to Dr. Patel for treatment, its role as her employer ended, and it took on the legally distinct persona of her treating hospital. Thus, MUSC's medical treatment of Tatum was the same as its treatment of a member of the general public and bore no relation to its other persona as Tatum's employer. MUSC conceded at oral argument that non-employee members of the general public would have a viable malpractice claim against MUSC on the facts presented here, and we see no reason why Tatum should be treated differently.[7] We can discern no tenet of public policy which would justify insulating MUSC from liability under these facts.

## CONCLUSION

■ We hold that South Carolina recognizes the dual persona doctrine in cases where the employer-hospital and its physicians negligently treat an employee for a work-related accident and in so doing, exacerbate the injury. The Workers' Compensation Act exclusivity provisions do not bar a suit against MUSC in this case because MUSC was acting in a totally separate capacity as a legally distinct persona at the time of the malpractice. Consequently, we reverse the trial

---

7. Tatum also raised an equal protection argument. However, this issue is not preserved for our review because Tatum did not raise it in her complaint, she did not argue it during the motion hearing, the trial judge did not rule on it, and Tatum did not file a Rule 59(e), SCRCP, motion for reconsideration. *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding where the trial court does not rule on an issue and appellant fails to move under Rule 59(e), SCRCP, to alter or amend the judgment, the issue is not properly before the court of appeals).

judge's dismissal of Tatum's cause of action and remand this case for a trial on the merits.

**REVERSED AND REMANDED.**

HUFF and STILWELL, JJ., concur.