November 8, 2002 order after the motion for summary judgment that dismissed the case without prejudice as to the UMA and Kratz

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Kay Biser, individually and as duly appointed Personal Representative of the Estate of Christopher Biser, M.D., Appellant,
 
 
 

v.

 
 
 
 Medical University of South Carolina, University Medical Associates, John M. Kratz, M.D., and Andrea J. Shaer, M.D., Defendants,
 Of Whom Medical University of South Carolina, University Medical Associates, John M. Kratz, M.D. are the Respondents.
 
 
 

Appeal From Charleston County
 R. Markley Dennis, Jr., Circuit Court Judge

Unpublished Opinion No. 2005-UP-592
Heard September 14, 2005  Filed November 21, 2005
Withdrawn, Substituted and Refiled February 8, 2006

AFFIRMED

 
 
 
 J. Edward Bell, III and Kevin R. Dean, both of Sumter and Eugene C. Fulton, Jr., of Columbia, for Appellant.
 Robert H. Hood, Robert H. Hood, Jr., Roy P. Maybank, and Deborah H. Sheffield, all of Charleston, for Respondents.
 
 
 

PER CURIAM:  Kay Biser appeals a trial court order refusing to add parties previously dismissed from the suit.  Because we find the dismissed parties are protected by Section 15-78-70 of the South Carolina Tort Claims Act, we affirm.
FACTS
This case is founded on allegations of medical negligence arising from a procedure performed at the Medical University of South Carolina (hereinafter MUSC) by Dr. John Kratz on Dr. Christopher Biser.    Because the facts surrounding the medical procedure are immaterial to our current determination, we do not recount them here, except to say that Biser did not survive.  His wife, in her individual capacity and as the personal representative of her husbands estate, brought a medical negligence suit against MUSC, University Medical Associates (hereinafter UMA), John Kratz, M.D., and Andrea Shaer, M.D.   
Prior to trial, the defendants moved for summary judgment.  At the same time, Biser brought a motion to compel against the defendants for failure to comply with discovery requests.  The trial court took the unusual step of dismissing all of the defendants without prejudice except for MUSC, while also requiring the original defendants to comply with the discovery requests.  The trial court further ordered, that if during the course of discovery, Plaintiffs are able to discover evidence which supports their position in the Complaint, they may upon motion, move to amend to add the parties, Defendants Dr. Kratz, Dr. Shaer, and UMA.  
The dismissal was rooted in the trial courts understanding of Section 15-78-70 of the South Carolina Code (2005) and the holding in Proveaux v. Medical University of South Carolina, 326 S.C. 28, 482 S.E.2d 774 (1997).  Proveaux held that a physician employed by MUSC is immune from suit under the provisions of section 15-78-70, notwithstanding MUSC and the physicians relationship with UMA.  Id. at 30-32, 482 S.E.2d at 775-76.  
Biser did not appeal the dismissal of UMA, Dr. Kratz, and Dr. Shaer, but did move to add Dr. Kratz and UMA after discovering evidence detailing the close relationship between MUSC and UMA and new evidence suggesting Dr. Kratz was not an employee of MUSC but UMA.  Essentially, Biser argued UMA and MUSC are separate organizations so the tort claims cap would not apply to UMA.  Kratz argued in reply that he was employed by MUSC, not UMA and supported his position by arguing that UMA fits within subsection 70(c) as a practice plan.  The court denied the motion to amend and concluded Proveaux applied because UMA does not perform any activity that would make it liable for Dr. Kratzs actions.    
STANDARD OF REVIEW
Although this appeal is brought to us as a motion to amend, we review it as a grant of summary judgment to Dr. Kratz and UMA.  This is the proper standard of review because these parties were originally named but dismissed without prejudice.  In addition, the dismissing order specifically contemplated they could be returned to the suit if facts were uncovered in discovery to justify them as parties.  As a general rule, amendment is strongly favored and should be applied liberally when it does not cause prejudice.  Crestwood Golf Club, Inc. v. Potter, 328 S.C. 201, 218, 493 S.E.2d 826, 835-36 (1997).  The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried and a lack of opportunity to refute it.  Tanner v. Florence County Treasurer, 336 S.C. 552, 559, 521 S.E.2d 153, 156 (1999).  The party opposing the amendment has the burden of establishing prejudice.  Foggie v. CSX Transp., Inc., 315 S.C. 17, 22, 431 S.E.2d 587, 590 (1993).
While a motion to amend should be liberally granted, the court also ruled Kratz and UMA were immune from suit and not proper parties under Proveaux.  This served as the real reason to deny the amendment; therefore, we must examine whether the court correctly ruled as a matter of law that they were not proper parties to the litigation.  
In reviewing an order for summary judgment, the appellate court applies the same standard which governs the trial court under Rule 56 of the South Carolina Rules of Civil Procedure: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  South Carolina Elec. & Gas Co. v. Town of Awendaw, 359 S.C. 29, 34, 596 S.E.2d 482, 485 (2004).  When determining whether any triable issues of fact exist, evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  Id.
LAW AND DISCUSSION
1.   Dr. Kratz
Biser argues the court erred when it refused to add Dr. Kratz as a defendant.  We disagree.
Section 15-78-70 of the South Carolina Code (2005) states: 

 (a)  This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity.  An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b).
 (b) Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employees conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

(Emphasis added).
Biser does not contend Dr. Kratz committed fraudulent, malicious, or intentional actions, or any crime involving moral turpitude.  Instead, Biser argues the statute should not apply to Dr. Kratz because it appears he was an employee of UMA, which was a private entity providing medical care and treatment.    
Initially, it is necessary to understand that UMA is the MUSC-authorized faculty practice plan.  Faculty members at MUSC do not solely teach students, they also deliver medical care in the course of their teaching.  This means that extensive amounts of money are generated by faculty members for the treatment they provide in the course of their employment at MUSC.  MUSC has authorized UMA as the faculty practice plan, and in that capacity, UMA performs billing and collection functions for the faculty physicians.  Faculty members are paid through MUSC and also receive separate pay checks from UMA for services rendered in their professional capacity to patients.  
Subsection (c) of section 15-78-70 addresses the existence of physician immunity when part of their income is received from a practice plan.  It states, in pertinent part, the following: 

 The provisions of this section in no way shall limit or modify the liability of a licensed physician or dentist, acting within the scope of his profession, with respect to any action or claim brought hereunder which involved services for which the physician or dentist was paid, should have been paid, or expected to be paid at the time of the rendering of the services from any source other than the salary appropriated by the governmental entity or fees received from any practice plan authorized by the employer whether or not the practice plan is incorporated and registered with the Secretary of State.  

(Emphasis added).  This section clearly establishes that physician immunity exists even when the physician receives money from a practice plan.
Proveaux v. Medical University of South Carolina, 326 S.C. 28, 482 S.E.2d 774 (1997), addressed this provision and clearly established that a faculty member at MUSC retains the immunity provided by section 17-78-70 when they receive part of their compensation through UMA.  In Proveaux, the physician received his annual income from two sources: MUSC and UMA.  Id. at 31, 482 S.E.2d at 775-76.  The supreme court found that because MUSC had to approve the maximum compensation of all physicians, the defendant-physician qualified for immunity under section 15-78-70(c).  Id. at 32, 482 S.E.2d at 776.  
Proveaux is directly on point and requires this court to find that Dr. Kratz qualifies for immunity under section 15-78-70.  Therefore, the trial court did not err in either dismissing him from the case or refusing to amend the complaint to include him as a defendant.
2.   UMA
Biser argues the court erred when it denied the motion to add UMA as a defendant.  We disagree.
Proveaux does not directly address the potential liability of UMA; however, after reviewing the legislative intent behind section 15-78-70 and UMAs ability to control and direct the actions of Dr. Kratz, we find UMA cannot be found liable for Dr. Kratzs actions. 
A partial purpose of section 15-78-70 is to shield government physicians from personal liability arising from the medical care they deliver as government physicians.  Although Dr. Kratz is clearly covered, Biser seeks to escape the liability limits created by the Tort Claims Act by holding UMA liable for Kratzs actions.  However, UMA was created to bill and collect revenue generated by faculty physicians in the course of their work.  See Baird v. Charleston Cnty, 333 S.C. 519, 536, 511 S.E.2d 69, 78 (1999) (UMA is described as a non-profit corporation formed as a billing and collection agent for the clinical practice of medicine at MUSC.  UMA is an operation of MUSCs Clinical Practice Plan.) (citations omitted).  Section 15-78-20(g) of the South Carolina Code (2005) recognizes that governmental entities, in order to attract qualified physicians . . . , must be able to offer an affordable compensation and employment package, including liability insurance.  
The impact of allowing suits to proceed against UMA, which is not protected by the state Tort Claims Act, would be to eviscerate the careful balance between liability and immunity created by the Act.  A successful plaintiff could pursue an unlimited recovery against UMA.  This unlimited recovery would negatively impact the compensation paid through UMA for the services the faculty physicians perform as employees of MUSC.  The result would be that the objectives of 15-78-20(g) and 15-78-70(c) would be either diminished or obliterated.  
Additionally, although Biser argues UMA is the real employer of Dr. Kratz, an examination of his relationship with UMA demonstrates that it does not exercise the level of control we normally associate with an employee-employer relationship.  Control is the general test used to determine if a worker is an employee.  Nelson v. Yellow Cab Co., 349 S.C. 589, 594, 564 S.E.2d 110, 112-13 (2002).  
Although we recognize Nelson sought to distinguish between an independent contractor and employee, we find the factors it enumerated to be useful in judging the relationship between UMA and Dr. Kratz, and the appropriateness of holding UMA liable for his actions.  Because we must focus on control, there are factors we must consider: 1) direct evidence of the right or exercise of control, 2) furnishing of equipment, 3) right to fire, and 4) method of payment.  Id. at 594, 564 S.E.2d at 113.  Dr. Kratz has an employment contract with MUSC and not UMA.  He was hired by MUSC and is subject to being fired solely by MUSC.  MUSC is the only entity with the ability to control and direct Dr. Kratzs activities.  Therefore, MUSC is his employer and, as such, should be the party subject to liability for his actions.  
AFFIRMED.
ANDERSON, J., STILWELL and WILLIAMS, JJ., concur.